RED STAR EXPRESS, Petitioner,

v.

DISTRICT OF COLUMBIA DEPARTMENT OF EMPLOYMENT SERVICES, Respondent.

No. 91–456.

District of Columbia Court of Appeals.

Argued Jan. 22, 1992.

Decided April 3, 1992.

Donald P. Maiberger, Washington, D.C., for petitioner.

Edward E. Schwab, Asst. Corp. Counsel, with whom John Payton, Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on the brief, for respondent.

Before TERRY, FARRELL and KING, Associate Judges.

KING, Associate Judge:

Petitioner, an employer, seeks reversal of the decision by the Department of Employment Services (DOES) denying a request for reimbursement from the Special Fund pursuant to D.C.Code § 36–308(6) (1988 Repl & 1991 Supp.) for payments made to an injured employee under the District of Columbia Workers' Compensation Act of 1979 ("DCWCA").[1] At the time petitioner filed his claim, § 36–308(6) provided:

> If an employee receives an injury which combined with a previous occupational or nonoccupational disability or physical impairment causes substantially greater disability or death, the employer shall be liable for only that part of the disability or death, and the compensation due therefrom, as caused by the subsequent injury: Provided, that supplemental compensation shall be provided from the special fund ... to raise the total compensation received ... to that amount which the employee ... would be entitled ... if the subsequent injury alone had caused the subsequent amount of disability or death. ...

---

1. D.C.Code §§ 36–301 to –345 (1988 Repl. & 1991 Supp). Prior to the effective date of the DCWCA, the federal Longshoremen's and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. §§ 901–950, applied to workers' compensation claims in the District of Columbia. *Lee v. District of Columbia Department of Employment Services,* 509 A.2d 100, 103 (D.C.1986). The LHWCA served as a model for the DCWCA.

D.C.Code § 36–308(6) (1988 Repl.). Petitioner contends DOES misapplied the law when it denied its claim after determining that (1) there was no proof the employee's drug problem was a previous physical impairment,[2] and (2) an employer is ineligible for reimbursement from the Special Fund if the employee's previous disability or physical impairment resulted from work done for the same employer ("same-employer exception"). We affirm.[3]

## I.

In October 1982, petitioner's employee sustained a back injury while at work within the scope of his employment. Petitioner paid the employee's medical costs and temporary total disability benefits. It then requested reimbursement from the Special Fund on the grounds that the employee's current disability was "substantially greater" due to the existence of prior work injuries and a drug dependency. Petitioner argued that the employee's prior injuries weakened his back making it more susceptible to further injury and that once he was injured his drug dependency hampered his recovery. At a hearing, petitioner introduced evidence that the employee had previously injured his back and that he was taking methadone to treat a heroin addiction. Petitioner's medical expert testified that the employee's previous accidents and his drug problem together "substantially attributed to the greater difficulty." Upon further examination, however, the medical expert opined that the main reason the employee could not return to work was due to the fact that he could not receive medication for his back injury until he was cured of his preexisting drug addiction.

DOES denied petitioner reimbursement because petitioner failed to establish that methadone maintenance constituted a previous "physical impairment." DOES also denied reimbursement on the alternative ground that petitioner was not entitled to Special Fund relief pursuant to the same-employer exception.

## II.

■ Our standard of review is prescribed by D.C.Code § 1–1510 (1987 Repl.). The agency must make findings on each material issue of fact; its findings must be supported by substantial evidence; and its conclusions must flow rationally from those findings and comport with the applicable law. *Colton v. District of Columbia Dep't of Employment Servs.*, 484 A.2d 550, 552 (D.C.1984). On an issue of statutory interpretation, we defer to the agency's interpretation so long as it is not plainly wrong or inconsistent with the legislature's intent. *Remin v. District of Columbia Rental Hous. Comm'n*, 471 A.2d 275, 279 (D.C.1984).

Petitioner contends DOES erred in concluding that its employee's drug dependency was not a "physical impairment." It asserts that the error arose because DOES failed to follow its own interpretation of the statute as set forth by the Director of DOES in a prior agency decision, *Beta Constr. Co. v. Office of Workers' Compensation*, H & AS No. 83–124 (October 10, 1985) (Final Compensation Order). We disagree.

■ Under the statute a person's condition is considered a "physical impairment" if that condition "is likely to be a hindrance or obstacle to obtaining employment." D.C.Code § 36–301(17) (1988 Repl. & 1991 Supp.). Under *Beta, supra*, a condition is likely to be such a hindrance or obstacle if it would reasonably cause a

---

2. "'Physical impairment' means any physical or mental condition which is or is likely to be a hindrance or obstacle to obtaining employment." D.C.Code § 36–301(17) (1988 Repl. & 1991 Supp.).
   "'Disability' means physical or mental incapacity because of injury which results in the loss of wages." *Id.* at § 36–301(8).

3. While petitioner's claim was pending before DOES, § 36–308(6) was modified. DOES contends we should apply the new law which would render petitioner's claim moot because the type of disability payments made by petitioner are now excluded from the coverage of the Special Fund. Petitioner contends the old law should apply.
   Since we affirm the decision of DOES on the merits, we do not reach the question of the effect of the new provision on this claim.

potential employer to be reluctant to hire a person because of (1) "fear that [it] will make the person a less capable worker," (2) fear that it will make the person "a greater risk in terms of getting injured," or (3) fear that it will make the person "a greater risk in terms of degree of disability that the person would suffer from an injury." *Beta Constr. Co., supra,* order at 13. DOES concluded that "the record evidence falls short of showing that [the employee's] daily ingestion of methadone ... was likely to be an adverse factor in his being employed or being retained in employment." After conducting an independent review of the record, we are satisfied that the conclusion reached by DOES is in accord with the applicable statute and the prior decision by DOES in *Beta.*

To establish that the employee's methadone maintenance constituted a physical impairment, petitioner relied upon the testimony of its medical expert. Although the expert testified that an excessive dose of methadone causes sleepiness and drowsiness, he did not testify that the dosage taken by the employee was excessive; nor did he even describe the effects of the dosage actually taken by the employee. Further, although the expert testified that the methadone treatment materially affected the employee's "ability to perform in any sustained manner in a job," that opinion was directly contradicted by the employee, who stated that during the years he had taken methadone the methadone never interfered with his ability to do his job. No evidence was presented to refute the employee's claim.

Nor was any evidence presented to establish that employers generally would be reluctant to hire a person undergoing methadone treatment for fear that that person would be less capable or more likely to suffer an injury. Petitioner relies upon its expert's testimony that he would not personally recommend employment as a driver for one undergoing methadone maintenance. However, the expert did not testify

that employers generally would be reluctant to hire a person undergoing methadone maintenance; nor is there any indication that he was qualified to do so. We conclude, therefore, that substantial evidence does not exist to support the contention that the employee was either less capable or more likely to injure himself because of the methadone he was taking or that employers would reasonably fear that such an employee would be less capable or more likely to suffer an injury.

In addition, there was no evidence presented establishing that taking methadone made the employee a greater risk in terms of the degree of disability he would suffer if injured. On the contrary, the expert testified that the methadone maintenance did not enhance the employee's disability caused by his last injury. Nor was there any evidence presented that employers would reasonably fear that a person taking methadone would be a greater risk in terms of the degree of disability that person would suffer if injured. Again, petitioner relies upon its expert's personal opinion, an opinion which could be properly rejected for the reason we have already stated. Thus, substantial evidence does not exist to support the contention that the methadone maintenance increased the risk that the employee would suffer a greater disability if injured or that employers would reasonably fear such a risk.

There is ample support for the conclusion of DOES that petitioner failed to establish that its employee's methadone maintenance constituted a physical impairment in that employers should generally be reluctant to hire or retain him because of it.[4] That conclusion defeated petitioner's claim. The success of the claim was dependent entirely upon a finding that the drug problem was a previous physical impairment. Petitioner did not assert, nor did it present any evidence to establish, that the employee's prior back injuries alone caused the 1982 injury to be a "substantially greater disabili-

---

4. Our holding that DOES could conclude that petitioner failed to demonstrate that its employee's methadone maintenance constituted a pre-existing "physical impairment" is confined to

the facts presented in this case. We do not hold that DOES could never find a drug addiction to be a pre-existing "physical impairment."

ty." Having determined that petitioner failed to establish a necessary component of its claim, that the employee's drug dependency constituted a preexisting physical impairment, DOES concluded that petitioner's request for reimbursement must be denied.[5]

The conclusion of DOES is supported by substantial evidence and is in accordance with the applicable law. Therefore, the decision of DOES is

*Affirmed.*

---

5. DOES also denied the claim on the alternative ground that the previous work related injuries were precluded from consideration for Special Fund relief by the same-employer exception. We do not decide whether DOES could apply the same-employer exception. Petitioner asserts that there is no rational basis for treating employers who hire disabled workers differently from employers who retain disabled workers and that the same-employer exception gives an economic incentive to employers to fire workers once they are injured. In response, DOES contends that its interpretation creates an incentive to employers to create safer working environments. DOES offers no explanation for this substantial deviation from its prior interpretations of the provision. Nor does DOES effectively counter petitioner's argument that its in-

terpretation is contrary to the primary purpose of the Special Fund provision—discouraging employment discrimination against the disabled or impaired arising out of the fear of increased workers' compensation liability for any injuries that such workers might suffer.

Finally, we note that federal courts that have interpreted the LHWCA, the antecedent to the DCWCA which serves, in part, as a model for the DCWCA, reject the same-employer exception. *C & P Telephone Co. v. Director, Office of Workers Compensation Programs,* 184 U.S.App. D.C. 18, 27, 564 F.2d 503, 512 (1977); *see, e.g., General Dynamics Corp. v. Sacchetti,* 681 F.2d 37, 40 (1st Cir.1982); *Director, Office of Workers' Compensation Programs v. Sun Shipbuilding & Dry Dock Co.,* 600 F.2d 440, 442 (3d Cir.1979).