Gary A. **WILLIAMSON**, Petitioner,

v.

**DISTRICT OF COLUMBIA BOARD OF DENTISTRY**, Respondent.

No. 93–AA–247.

District of Columbia Court of Appeals.

Argued April 21, 1994.

Decided Sept. 8, 1994.

James A. Watson II, Fairfax, VA, for petitioner.

Karen L. McDonald, Asst. Corp. Counsel, with whom John Payton, Corp. Counsel at the time the brief was filed, and Charles L. Reischel, Deputy Corp. Counsel, Washington, DC, were on the brief, for respondent.

Before STEADMAN and FARRELL, Associate Judges, and PRYOR, Senior Judge.

STEADMAN, Associate Judge:

Before us is a petition for review of an appeal from the revocation of a dentistry license for a minimum of five years by the District of Columbia Board of Dentistry ("The Board"), based upon four charges of violation of D.C.Code § 2–3305.14(a) (1994). One of the charges was premised on petitioner's prior separate discipline—the summary suspension of his controlled substances registration—by the Department of Consumer and Regulatory Affairs ("DCRA"), another licensing authority. Petitioner argues that this charge was improperly sustained because the summary suspension had previously been dismissed by operation of law and was therefore a "nullity." In addition, he challenges the Board's action with respect to the remaining three charges, also related to controlled substance matters, on the grounds that they were not supported by substantial

evidence on the record as a whole and that certain Board conclusions with respect thereto were arbitrary, capricious and not in accordance with law. We affirm.

## I.

A dentist who deals with controlled substances must obtain two forms of government authorizations. First, the dentist needs a license to practice dentistry, renewable annually by the Board of Dentistry. D.C.Code §§ 2–3305.1, –3305.10, –3302.1(b) (1994).[1] Second, the dentist must obtain an annual registration, issued by DCRA as the delegee of the Mayor, to dispense controlled substances. D.C.Code §§ 33–532(a), –533(c), –501(20)(A) (1993).[2] Both the license and the registration are subject to summary suspension and "permanent"[3] suspension or revocation proceedings.

On August 28, 1991, DCRA issued notice of summary action to suspend petitioner's registration to dispense controlled substances pursuant to D.C.Code § 33–535(b)(1), notice of intent to permanently suspend or revoke his registration pursuant to D.C.Code § 33–534(a), and notice of summary action to suspend petitioner's dentistry license, pursuant to D.C.Code § 2–3305.15(a).[4]

Following a hearing, an administrative law judge ("ALJ") in an order of September 27, 1991, sustained the summary suspension of the registration but set aside the summary suspension of the licence.[5] Subsequently, on November 7, 1991, the same ALJ dismissed the notice to permanently revoke petitioner's registration since the basis for permanent revocation, the suspension of petitioner's license,[6] was no longer extant and since the registration had expired by its own terms on September 30, 1991.

On January 8, 1992, the Board issued a notice of intent to take disciplinary action against petitioner's license setting forth four charges: (1) that petitioner was "disciplined by a licensing and disciplinary authority [DCRA] for conduct that would be grounds for [discipline]" by the Board, pursuant to § 2–3305.14(a)(3); (2) that petitioner fraudulently or deceptively used his license to obtain Schedule II controlled substances, in violation of D.C.Code § 2–3305.14(a)(2), 22 DCMR § 1301.1, 21 C.F.R. § 1306.4 (1993);[7] (3) that petitioner "failed to keep records and to maintain an inventory of Schedule II controlled substances in [violation of] federal and District of Columbia laws and regulations," D.C.Code § 33–536, 21 C.F.R. § 1304.03 (1993);[8] and (4) that petitioner failed to make, keep or furnish inventory records, order forms and invoices to the Drug Enforcement Administration ("DEA")

1. D.C.Code § 2–3301.1 et seq. and the corresponding regulations, 17 DCMR § 4001 (1990) et seq., and 17 DCMR § 4100 (1990) et seq. govern all aspects of licenses in health care occupations.

2. D.C.Code § 33–531 et seq. and 22 DCMR § 1000 (1986) et seq., and 22 DCMR § 1100 (1986) et seq. regulate the dispensing of controlled substances pursuant to a registration.

3. We use this term to distinguish this proceeding from a summary suspension or revocation.

4. The Mayor is authorized to summarily suspend a license, D.C.Code § 2–3305.15(a), although disciplinary steps relating to licenses of health professionals are generally in the hands of the relevant board. D.C.Code §§ 2–3305.14(a), –3301.-1(1).

5. He ruled that the District had failed to meet its burden of showing that petitioner's continued practice of dentistry "present[ed] an immediate danger to the health and safety of the residents of the District," as required by D.C.Code § 2–3305.-15(a). Petitioner made no argument to the

Board nor to us that the failure to sustain the suspension of the license per instanter lifted the suspension of the registration.

6. A permanent suspension or revocation of a registration under D.C.Code § 33–534(a) may be imposed upon a finding, inter alia, that the registrant "[h]as had his or her practitioner's license suspended or revoked in the District of Columbia by the appropriate authority." Id. § 33–534(a)(3).

7. The basis for this charge was that ten patients' dental charts did not reflect the prescriptions issued purportedly for their use, and that they did not receive the medication prescribed.

8. The grounds for this charge were: (1) the same grounds as in charge one, see supra note 7; (2) that from March 1988 to April 1990 petitioner obtained Schedule II controlled substances in the name of several patients, by having staff members pick up the prescriptions, by ordering five pints of a Schedule II controlled substance without properly documenting them.

investigator in violation of D.C.Code §§ 33–542(a)(3), –536, 2–3305.14(a)(25), 21 C.F.R. §§ 1305.03, 1305.13 (1993).[9]

After a two day hearing on this matter, the Board, on December 12, 1992, sustained all four charges, revoked petitioner's license and imposed several conditions on reinstatement including a five year minimum period of revocation, completion of 30 hours of education on record-keeping and ethics, and production of specific evidence that petitioner had not abused alcohol and other substances during the revocation period. Petitioner seeks review of that action in this court. D.C.Code § 11–722 (1989).

## II.

■ With respect to charge one, petitioner argues that the Board overlooked that "the summary suspension of the registration to dispense controlled substances necessarily terminated on November 7, 1991 when the Administrative Law Judge dismissed the proceeding entitled Notice of Intent to Revoke Registration to Dispense Controlled Substances," and that the Board therefore "erroneously concluded that the summary suspension amounted to being disciplined by a licensing authority." He argues, in substance, that the summary suspension was only an interlocutory and temporary remedy and that when the permanent revocation proceeding was dismissed, the summary suspension became a "nullity."

The statutory provision authorizing the Board to impose disciplinary action upon a dentist, including revocation of a license, permits such action where the dentist has been "disciplined by a licensing or disciplinary authority ... for conduct that would be grounds for disciplinary action" by the Board pursuant to § 2–3305.14. D.C.Code § 2–3305.14(a)(3). Included among permissible grounds for discipline by the Board is conduct whereby a licensee "[v]iolates the statutory authorities of the Department of Con-

sumer and Regulatory Affairs as defined in Reorganization Plan No. 1 of 1983, and all applicable District laws and rules and regulations." *Id.* § 2–3305.14(25). Here, the Board concluded that the conduct found by the ALJ to support the summary suspension of the registration would also support action by the Board under § 2–3305.14(25), and hence sustained charge one based upon that violation. The Board rejected petitioner's argument that the summary suspension had become a "nullity" and concluded that "dismissal of the notice of intent to revoke or suspend did not void or 'dissolve' the summary suspension as a disciplinary action which was complete when taken."

■ We deal here with an agency's interpretation of a statute it administers, to which we give particular deference. *District of Columbia Metro. Police Dep't v. Perry,* 638 A.2d 1138, 1144 (D.C.1994) ("this court gives special deference to an agency in the agency's interpretation of a statute that the agency is empowered to administer and enforce"); *Kates v. District of Columbia Rental Hous. Comm'n,* 630 A.2d 1131, 1133 (D.C.1993) (this court will defer to interpretation of statute that agency administers unless inconsistent with applicable statute); *Smith v. District of Columbia Dep't of Employment Servs.,* 548 A.2d 95, 97 (D.C.1988) ("agency's interpretation of the statute it administers is binding on this court unless it conflicts with the plain meaning of the statute or its legislative history"). We think that petitioner overstates the effect of the dismissal of the proceeding to permanently revoke the registration and that the Board permissibly concluded that the summary suspension here could be treated as prior "discipline" within the meaning of D.C.Code § 2–3305.14(a)(3).

A summary suspension of a registration is authorized by D.C.Code § 33–535(b). It is initially imposed, simultaneously with the institution of permanent suspension or revocation proceedings under § 33–534(a), to prevent "imminent danger to the public health

---

9. The grounds for this charge were: (1) the grounds in charge one, see *supra* note 7; (2) the grounds of charge two, see *supra* note 8; and (3) "During the period of October 1989 through June 1990, [petitioner] ordered and received [four Schedule II controlled substances] from ...

a drug wholesaler, ... none of which was accounted for as required by federal and state drug control laws when such accounting was requested by a DEA investigator during an inspection on or about November 7, 1990."

or safety." D.C.Code § 33–535(b)(1). A summary suspension may be instituted without prior notice or hearing, *id.*, and it is designed to protect against emergency situations such as an outbreak of a serious fire on premises in which controlled substances are stored or where there are grossly inadequate security measures. *Id.* A summary suspension continues in effect "until the conclusion of proceedings, including judicial review thereof, unless sooner withdrawn by the Mayor or dissolved by a court of competent jurisdiction." *Id.* § 33–535(b)(2).

However, although initially imposed without a hearing, a summary suspension of registration cannot be continued without providing to the person affected the full panoply of due process rights. Within five days after the institution of summary suspension proceedings, unless the respondent requests more time, a hearing must be provided, held in accordance with the District of Columbia Administrative Procedure Act, including the right of judicial review. D.C.Code § 33–535(a). The process thus provided and the requisite level of proof [10] are indeed coextensive with that provided for proceedings to permanently revoke the registration. D.C.Code § 33–535(a); 22 DCMR § 1102.4 ("all procedures relating to hearings as set forth in this chapter shall apply to hearings in summary suspensions").

Accordingly, petitioner was here provided with such a hearing, which extended over three days and was attended by petitioner and his counsel. Following that hearing, the ALJ concluded that the District had met its burden of proving by substantial evidence that the summary suspension of the registration was necessary to prevent "imminent danger to the public health and safety" as required by the statute, basing this conclusion on the fact that petitioner had not taken adequate safeguards to insure proper and documented inventory and dispensing controls of controlled substances. Specifically, the ALJ found that "[t]here is strong and unrefuted evidence that prescriptions were written for two of [petitioner's] patients … and that these two patients either did not receive the prescriptions, did not use the medication prescribed …, ha[ve] never used the medication prescribed … or could not use the medication prescribed."

It is true, as petitioner notes, that a summary suspension only continues in effect "until the conclusion of the proceedings, including judicial review thereof, unless sooner withdrawn by the Mayor or dissolved by a court of competent jurisdiction." D.C.Code § 33–535(b)(2). But it does not follow that the suspension, where supported by substantial evidence as here, may not be deemed to be prior discipline for purposes of a license suspension simply because no permanent registration revocation is ever effectuated. While the dismissal of the proceedings to permanently revoke the registration may have terminated the summary suspension,[11] the dismissal did not implicate or bring into question the conduct of petitioner underlying the summary suspension. In these circum-

**10.** In both summary suspension and permanent revocation of registration proceedings, the government bears the burden of proof, 22 DCMR § 1108.2 ("[i]n any proceeding resulting from a proposed action … to suspend or revoke a registration, the burden shall be on the [DCRA] to show that the proposed action should be taken"), and must make its case by "reliable, probative, and substantial evidence." 22 DCMR § 1109.4 ("Findings of fact and conclusions of law shall be supported by and shall be in accordance with reliable, probative, and substantial evidence"). Likewise, the District of Columbia Administrative Procedure Act requires that in contested cases, the burden of proof is on the proponent of a rule or order, D.C.Code § 1–1509(b) (1992), and that the findings of fact and conclusions of law must be "supported by and in accordance with the reliable, probative, and substantial evidence." *Id.* § 1–1509(e).

**11.** The Board erred in its view that the summary suspension of the registration survived the November 7, 1991, dismissal and instead continued until the restoration of his registration by a consent agreement on the following June 12, 1992. However, we see no need to remand on this basis. The critical question before the Board was whether the summary *suspension of the registration* had any legal effect for purposes of D.C.Code § 2–3305.14(a)(3), not the term of the suspension. *See Arthur v. District of Columbia Nurses' Examining Bd.*, 459 A.2d 141, 146 (D.C. 1983) (reversal and remand required "only if substantial doubt exists whether the agency would have made the same ultimate finding with the error removed").

stances, we are unable to accept petitioner's argument that the Board was compelled to conclude that the dismissal "nullified" the summary suspension for purposes of application of D.C.Code § 2–3305.14(a)(3).[12]

## III.

With respect to the remaining three charges, also sustained by the Board, petitioner raises a number of separate arguments that these charges were not supported by substantial evidence on the record as a whole, and that some of the Board's conclusions with respect thereto were arbitrary, capricious and not in accordance with law. We have examined each of petitioner's assertions and find no basis for reversal.

■ Our scope of review is limited. *See* D.C.Code § 1–1510 (1992). The agency must make findings on each material issue of fact, *Red Star Express v. District of Columbia Dep't of Employment Servs.*, 606 A.2d 161, 163 (D.C.1992); the factual findings must be supported by substantial evidence on the record as a whole, D.C.Code § 1–1510(a)(3)(E); and the agency's conclusions must flow rationally from those findings and comport with the applicable law. *Red Star Express*, 606 A.2d at 163. "Our function is to ascertain whether the inferences drawn by the administrative agency are within the reasonable boundaries prescribed by the facts." *North Central Airlines, Inc. v. Civil Aeronautics Bd.*, 105 U.S.App.D.C. 207, 210, 265 F.2d 581, 584, *cert. denied*, 360 U.S. 903, 79 S.Ct. 1285, 3 L.Ed.2d 1254 (1959).

■ Substantial evidence is more than a mere scintilla of evidence and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Hockaday v. District of Columbia Dep't of Employment Servs.*, 443 A.2d 8, 12 (D.C. 1982) (quoting *Washington Post Co. v. District Unemployment Compensation Bd.*, 377 A.2d 436, 439 (D.C.1977)). Factual findings supported by substantial evidence on the record as a whole are binding on the reviewing court, *Proulx v. Police and Firemen's Retirement and Relief Bd.*, 430 A.2d 34, 35 (D.C.1981); *Spevak v. District of Columbia Alcoholic Beverage Control Bd.*, 407 A.2d 549, 554 (D.C.1979), although this court may have reached a different result based on an independent review of the record. *Washington Post Co. v. District Unemployment Compensation Bd.*, 377 A.2d at 439. We must be particularly deferential to the agency's determination where the decision lies within the agency's expertise. *Barry v. Wilson*, 448 A.2d 244, 246 (D.C.1982) (we should not substitute our judgment in areas of expertise reserved for agency); *see also International Ladies' Garment Workers Union v. Donovan*, 232 U.S.App.D.C. 309, 335, 722 F.2d 795, 821 (1983) ("this court must be particularly deferential when reviewing an agency's predictive judgments about areas that are within the agency's field of discretion and expertise"), *cert. denied*, 469 U.S. 820, 105 S.Ct. 93, 83 L.Ed.2d 39 (1984).

Applying these principles, we conclude that the Board's factual findings with respect to each of the charges were supported by substantial evidence on the record as a whole, that the Board's conclusions flowed rationally from those findings, and that all of the inferences which the Board drew were reasonable based on these findings.

■ With respect to charge two, the Board concluded that petitioner fraudulently or deceptively used his license to obtain

---

12. This is not to say that any summary suspension of registration will necessarily qualify as grounds for license discipline. To the contrary, as indicated above, the statute specifically requires that the prior discipline must be imposed "for conduct that would be grounds for disciplinary action" by the Board under the other twenty-four listed grounds for licensee discipline in § 2–3305.14(a). Summary suspension of registration arises from and focuses upon the need for prompt action and may well be based on considerations and imposed under circumstances in which the conduct of the registrant would not

meet the requisite standard for license discipline. However, the ALJ found by the same standard of proof applicable to permanent revocation proceedings that petitioner had not demonstrated adequate safeguards to insure proper and documented controls of controlled substances, and the Board in turn found that this conduct violated § 2–3305.14(a)(25). Appellant challenges the Board's sustention of charge one solely on the theory of "nullity" and not upon any inadequacy of proof or findings in the summary suspension proceeding to bar its use in this manner under § 2–3305.14(a)(3).

Schedule II controlled substances, by prescribing controlled substances for patients who did not receive them, having his employees regularly pick up prescriptions for his patients and failing to note the prescriptions in the patient's chart in their course of treatment. Petitioner relies on *Goodman v. Maryland,* 237 Md. 64, 205 A.2d 53 (1964) and claims that the Board erred by equating the act of obtaining a prescription with the act of obtaining a controlled substance. Petitioner contends that he did not "obtain" controlled substances because there was no evidence that he was in control or possession of any such controlled substance.

Here, the evidence showed that three patients did not receive twenty-one filled prescriptions of a Schedule II controlled substance.[13] Moreover, nine patients' records did not reflect prescriptions that were filled in the patients' names.[14] Two patients did not receive treatment on the dates that prescriptions were filed. Furthermore, there was testimony from both a former employee and patient of petitioner and a pharmacist that employees regularly filled prescriptions for petitioner's patients as a courtesy to them. We conclude that there is substantial evidence on the record as a whole to support

the Board's conclusion that petitioner obtained Schedule II substances through fraudulent or deceptive use of his license.

■ Petitioner also challenges as arbitrary, capricious and not in accordance with law, the Board's conclusion that because there was no notation of a prescription in a patient's record this indicated that the prescription was issued for a reason outside a legitimate medical purpose.[15] We are unable to agree. Here the Board's decision turns on its interpretation of a regulation that it is charged with implementing, and involves a determination that is peculiarly within the Board's expertise relating to the practice of dentistry, both of which call for particular deference under the authorities cited above.

■ With respect to charge three, petitioner contends that the Board's finding that petitioner was subject to the federal record-keeping requirements under 21 C.F.R. § 1304.03 because he "regularly engages in the dispensing ... of controlled substances and charges patients, either separately or together with charges for other professional services, for substances so dispensed," 21 C.F.R. § 1304.03(d), was not supported by substantial evidence. The Board found that

---

**13.** The Board found that the signatures on these prescriptions were written on petitioner's personalized prescription pad, and that the prescriptions carried the same signature as petitioner's DEA Form 222 and record release. Petitioner challenges this conclusion claiming that there was no evidence that the signature on the DEA forms and the release were that of petitioner. We disagree. The Board could reasonably infer that it was petitioner's signature from this evidence.

**14.** Petitioner's argument that there was no evidence that the dental records were complete is inapposite. First the Board specifically found that "[t]here is no evidence that the records provided by [petitioner] were anything but his complete records," that "[t]here is no indication that pages of the dental records ... are missing nor is there a break in the dating sequence that might indicate records or entries are missing," and "because it was [petitioner's] responsibility to turn the patient's complete records over to the [DEA] investigator, we must assume that this chart represents [petitioner's] complete record." We conclude that the Board's finding was supported by substantial evidence.

**15.** Pursuant to 22 DCMR § 1301.1 (1988), 21 C.F.R. § 1306.04 (1991), a prescription for a

controlled substance must be issued for a "legitimate medical purpose" by an individual practitioner acting in the usual course of his or her professional practice. The Board found that:

> [F]or a prescription for a controlled substance to be effective it must be issued for a legitimate medical purpose by a registered individual practitioner acting in the usual course of his professional practice. As evidence that a prescription is issued in the usual course of professional practice, the prescription should be noted on the patient's chart as part of his or her treatment for the dates of the prescription. The absence of a notation reflecting the issuance of a prescription on the date the patient received treatment or the total absence of any notation of treatment on the date the prescription was dated, indicates that [petitioner] issued prescriptions outside of legitimate medical purposes and thus it was fraudulently issued. A prescription issued pursuant to his license to practice dentistry for other than medical purposes supports the charge that [petitioner] fraudulently and deceptively used his license to issue prescriptions to obtain controlled substances.

(footnote omitted).

"[w]hile there is no specific evidence as to how [petitioner] billed his patients, it is reasonable to assume that [petitioner] was not providing his professional services and medication without charge, but charged his patients for his services and medications as is customary." We conclude that absent evidence to the contrary, the Board could reasonably infer that petitioner charged his patients for the medications provided in accordance with custom and practice.

■ Finally, with respect to charge four, petitioner challenges the Board's factual finding that petitioner maintained an office supply of controlled substances without properly maintaining records or properly recording the dispensations as required by D.C.Code § 33–536, 21 C.F.R. § 1304.03(a), and that petitioner failed to retain DEA Form 222 for two years in violation of D.C.Code §§ 33–542(a)(3), –536, 21 C.F.R. §§ 1305.03, 1305.-13. Both these findings are supported by substantial evidence. Petitioner's argument that there was no office supply as of August 1990 is inapposite since the time in question, October 1989 to June 1990, preceded this date. One patient's records on three different occasions from June 1989 to May 1990 indicate that a patient was given a controlled substance from "office supply."

Petitioner argues that his failure to produce all eleven DEA Forms 222 must be termed a "technical violation of the regulation" since "the absence of the forms is hardly of great consequence" and that "[t]he absence of the copies of the forms certainly has no bearing on ascertaining whether or not a registrant is improperly obtaining, using or disposing of controlled substances" because the supplier of the controlled substance and DEA retain copies of the forms. Petitioner concedes that he failed to produce four forms at the request of a DEA investigator. We conclude that the Board was clearly within its statutory authority, D.C.Code § 2–3305.-14(a)(25), to sanction conduct, here the failure to comply with record-keeping and inventory requirements, which is itself a violation of the Controlled Substances Act. D.C.Code §§ 33–542(a), –536; *see* 21 C.F.R. §§ 1305.-03(a), 1305.05(a), 1305.13(a–b), 1305.09(c) (order forms executed in triplicate; the pur-

chaser, petitioner here, must retain copy three, supplier retain copy one, and DEA the last copy); § 1304.13(c) (order forms must be maintained separately from all other records of registrant, and must be kept available for inspection for two years).

*Affirmed.*