*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 11-CV-609

RONDA NUNNALLY, APPELLANT

v.

DISTRICT OF COLUMBIA METROPOLITAN POLICE DEPARTMENT, APPELLEE.

Appeal from the Superior Court of the District of Columbia
(CAP-6295-07)

(Hon. Brook Hedge, Trial Judge)

(Argued January 17, 2013                    Decided December 12, 2013)

*Frederic W. Schwartz, Jr.*, for appellant.

*James C. McKay, Jr.*, Senior Assistant Attorney General, with whom *Irvin B. Nathan*, Attorney General, *Todd S. Kim*, Solicitor General, and *Donna M. Murasky*, Deputy Solicitor General, were on the brief, for appellee.

Before BECKWITH and EASTERLY, *Associate Judges*, and RUIZ, *Senior Judge*.

EASTERLY, *Associate Judge*:        Ronda Nunnally,[1] a Lieutenant in the

Metropolitan Police Department (MPD), made a request pursuant to D.C. Code

---

[1] Although Lt. Nunnally's first name appears as "Rhonda" in the pleadings and Superior Court decision in this case, our review of the record shows that Lt. Nunnally spells her name "Ronda."

§ 1-612.03 (j) (2012 Repl.) that she not be charged with sick leave for work she missed on account of a psychological injury.  D.C. Code § 1-612.03 (j) provides that "[s]ick leave may not be charged to the account of a uniformed member of the Metropolitan Police Department . . . for an absence due to injury or illness resulting from the performance of duty."  Lt. Nunnally alleged that she missed work due to psychological trauma incurred as a result of retaliation by her colleagues after she prevailed in a sexual harassment claim against a supervisor.  Lt. Nunnally's request for non-chargeable sick leave was denied by the MPD and that decision was affirmed by the Superior Court because her alleged psychological injuries were not deemed to have been incurred in the "performance of duty" as required by D.C. Code § 1-612.03 (j).  Examining the statute's plain language, we reach the opposite conclusion.  Accordingly, we reverse and remand for further proceedings consistent with this opinion.

## I.  Facts and Procedural History

In 2004, Lt. Nunnally filed a sexual harassment claim against her supervisor with the MPD Office of Diversity and EEO Compliance.  After an investigation, that office issued a report finding that Lt. Nunnally had been the victim of sexual harassment; MPD subsequently adopted the report and fired her harasser.  Lt.

Nunnally contends that, over the next three years, her coworkers retaliated against her, causing her psychological trauma.

Lt. Nunnally missed a number of months of work allegedly as a result of this trauma.[2] Asserting that she had been injured in the performance of duty under D.C. Code § 1-612.03 (j), she requested that her sick leave account not be charged for these absences. After this request was denied by the Director of MPD's Medical Services Section, Lt. Nunnally sought reconsideration of her claim from the Assistant Chief of Police, Office of Human Services. Acting as the Assistant Chief's designee, a Medical Claims Hearing Officer (MCHO) held an evidentiary hearing at which Lt. Nunnally was represented by counsel. Lt. Nunnally testified at the hearing and presented documentary evidence. The MCHO then issued a report recommending that the MPD deny her claim. The primary rationale for the MCHO's decision was that any psychological injury incurred had not been incurred in the performance of duty as required by statute;[3] the MCHO also determined that any psychological injury would not qualify as a compensable

---

[2] Precisely how many days of work Lt. Nunnally missed is unclear, although there is evidence in the record that she reported sick on January 19, 2007, and that she was on leave through November 30, 2007.

[3] The MCHO never made any clear factual findings; rather he appeared to determine that even if Lt. Nunnally's factual allegations were true, she had failed to state a claim for non-chargeable leave.

injury under MPD's stress protocol. In accordance with the MCHO's report, the Assistant Chief denied Lt. Nunnally's request for non-chargeable leave under D.C. Code § 1-612.03 (j).

Lt. Nunnally was informed both that she had a right to judicial review of the MPD's denial of her claim, and that, if she wished to exercise that right, she should file a Petition for Review with the District of Columbia Superior Court. Lt. Nunnally sought review in Superior Court, and the Superior Court affirmed the MPD's denial of her non-chargeable sick leave claim. Specifically, it affirmed the agency's determination that injuries stemming from sexual harassment are categorically ineligible for non-chargeable leave as they do not occur in the performance of duty as required by D.C. Code § 1-612.03 (j). This appeal followed.

## II. Jurisdictional Analysis

We begin by examining our jurisdiction to entertain Lt. Nunnally's appeal from the Superior Court's order upholding the MPD's denial of her claim for non-chargeable leave under D.C. Code § 1-612.03 (j).[4] Based on current law, it is not

---

[4] Although jurisdiction was not raised by either party in their initial briefs to this court, and although the parties ultimately agree in supplemental briefing on

(continued…)

obvious that a challenge to a denial by MPD of non-chargeable leave under D.C. Code § 1-612.03 (j) should go first to the Superior Court and, from there, to this court on appeal. For the reasons set forth below, we now hold this is the proper procedure.

In upholding MPD's denial of Lt. Nunnally's claim for non-chargeable leave, the Superior Court stated that it had "jurisdiction to review a final decision of an agency of the District of Columbia" and cited Super. Ct. Agency Rev. R. 1. But a court rule cannot confer jurisdiction on its own, and in any event, Rule 1 does not purport to confer on the Superior Court jurisdiction over all agency cases or any subset thereof. It merely addresses the procedure for review of agency decisions that arise under the Comprehensive Merit and Personnel Act (CMPA).[5]

We turn then to the text of the CMPA — the statute under which Lt. Nunnally made her request for non-chargeable sick leave and the statute to which

---

(…continued)
this issue that we have jurisdiction, we are obligated to independently consider the source of our jurisdiction. *See Murphy v. McCloud*, 650 A.2d 202, 203 n.4 (D.C. 1994).

[5] Rule 1 addresses such matters as the time and method of filing a petition for review, how to obtain a stay, the information that should be included in a petition for review, and the procedure after an application is filed.

Rule 1 alludes[6] — to determine if it specifies the jurisdictional path for review of agency decisions of this sort. *See District of Columbia Housing Auth. v. District of Columbia Office of Human Rights*, 881 A.2d 600, 608 (D.C. 2005); *see also* Super. Ct. Agency Rev. R. 1 (a). The CMPA routes certain types of agency decisions to the Superior Court for review, but denials of requests for non-chargeable leave are not among them. In particular, the category of cases eligible for review first by either the Office of Employee Appeals (OEA) or the Public Employee Relations Board (PERB) and then by the Superior Court does not include Lt. Nunnally's claim for non-chargeable leave under D.C. Code § 1-612.03 (j). *See* D.C. Code § 1-606.03 (d) (2012 Repl.) (OEA); D.C. Code § 1-617.13 (c) (2012 Repl.) (PERB); *see also* D.C. Code § 1-606.03 (a) (2012 Repl.) (detailing review by the OEA); D.C. Code § 1-605.02 (2012 Repl.) (detailing review by the PERB).

As a factual matter, Lt. Nunnally's non-chargeable leave claim has never been reviewed by either the OEA or the PERB and, as a legal matter, we see no reason that it should have been. We held in *District of Columbia v. Daniels*, 523

---

[6] The full title of the rule is "Superior Court Review of Agency Orders Pursuant to D.C. Code 1981, Title 1, Chapter 6." This version of the CMPA was supplanted when a new Code was published in 2001 and then again when a replacement edition was published in 2012. Despite a revision to Rule 1 in 2007, the title retains this anachronism.

A.2d 569 (D.C. 1987), that "a decision of the MPD denying non-chargeable sick leave is a 'grievance.'" *Id.* at 570 (footnote omitted). We further held that grievances should be routed to the OEA. *Id.* But eleven years after *Daniels*, the Council for the District of Columbia redefined and limited the OEA's jurisdiction so as to exclude non-chargeable sick leave claims. *See* Omnibus Personnel Reform Amendment Act of 1998, D.C. Law 12-124 (Act "limit[s] employee appeals to the Office of Employee Appeals to disciplinary actions and [reductions in force], or certain disciplinary actions that result in removals, reductions in grades, and suspensions of 10 days or more"); *see also* D.C. Code § 1-616.53 (a) (2012 Repl.). Thus, none of the CMPA provisions that address administrative appeals are helpful in determining where Lt. Nunnally should have sought review of MPD's denial of her claim for non-chargeable sick leave.

The same statute that removed grievances from the OEA's jurisdiction delegated to the Mayor the responsibility to promulgate rules and regulations setting forth the grievance procedure. *See* D.C. Code § 1-616.53 (a). But an examination of the regulations that were subsequently promulgated also leads to a dead end. The regulations provide that grievances should be sent to a grievance official, 6-B DCMR § 1636.2 (2000), and that "[t]he decision of the grievance official to deny the grievance, in whole or in part, shall be the final administrative

decision, and shall not be subject to further administrative appeal," *id.* at § 1636.8 (2000). The regulations do not specify a right to petition for review of that final administrative decision to the Superior Court (or anywhere else).

This does not end our analysis, however, because the Superior Court is a court of general jurisdiction, *see* D.C. Code § 11-921 (a) (2012 Repl.), and there is a "strong presumption of judicial review of agency action," *District of Columbia v. Sierra Club*, 670 A.2d 354, 358-59 (D.C. 1996) (quoting *People's Counsel v. Public Serv. Comm'n of the District of Columbia*, 474 A.2d 1274, 1278 n.2 (D.C. 1984)) (emphasizing the importance of judicial review as a check on agency discretion); *see also Martin v. District of Columbia Courts*, 753 A.2d 987, 991 (D.C. 2000) (the Superior Court's general jurisdiction "extends to claims . . . for equitable relief from allegedly unlawful actions by public officials . . . [including] challenges by public employees of official decisions affecting their tenure") (internal citations omitted)).[7]

---

[7] The "strong presumption" of Superior Court review of agency action may be rebutted only by "clear and convincing evidence of a contrary legislative intent." *District of Columbia Housing Auth.*, 881 A.2d at 608 (quoting *Martin*, 753 A.2d 987) (internal quotation marks omitted). We see no indication that the legislature intended to rebut the presumption of judicial reviewability for claims like Lt. Nunnally's, although we acknowledge that there are circumstances in which Superior Court review of an agency decision, including a grievance under

(continued…)

One significant exception to the Superior Court's general jurisdiction is this court's jurisdiction under the District of Columbia Administrative Procedure Act (DCAPA) over those appeals from administrative proceedings that are deemed "contested cases." D.C. Code § 2-510 (a) (2012 Repl.); *Capitol Hill Restoration Soc'y v. Moore*, 410 A.2d 184, 187-88 (D.C. 1979). A contested case is statutorily defined as "a proceeding before the Mayor or any agency in which the legal rights, duties, or privileges of specific parties are required by any law (other than this subchapter), or by constitutional right, to be determined after a hearing before the Mayor or before an agency." D.C. Code § 2-502 (8) (2012 Repl.). There is an exception to the exception, however: The statutory definition of a contested case excludes certain determinations, like the "selection or tenure of an officer or employee of the District," with the result that these selection or tenure challenges cannot be appealed directly to this court under the DCAPA. *Id.* Rather, review in such cases is properly conducted in the first instance by the Superior Court. *See Capitol Hill*, 410 A.2d at 188 (if a claim falls outside of the definition of a

_____

(…continued)
the CMPA, may be precluded. *See, e.g.*, *Coleman v. District of Columbia*, No. 11-CV-937 (D.C. Dec. 12, 2013).

contested case, "[a]ny party aggrieved by an agency's decision may initiate an appropriate equitable action in the Superior Court to seek redress").

Whether the Superior Court had jurisdiction to entertain Lt. Nunnally's petition for review (thereby giving this court jurisdiction to entertain her appeal from Superior Court) thus turns on whether her claim for non-chargeable sick leave falls within the selection-or-tenure exception to contested cases under the DCAPA. This court held in *Money v. Cullinane*, 392 A.2d 998 (D.C. 1978), that a decision by the MPD regarding non-chargeable sick leave under the predecessor statute to the CMPA[8] fell within the selection-or-tenure exception. We reasoned that whether to grant such leave is a "facet[] of personnel management." *See id.* at 999. In support of this determination, we cited to *Wells v. District of Columbia Bd. of Ed.*, 386 A.2d 703 (D.C. 1978), in which this court had previously analyzed the legislative history of the DCAPA and held that the selection-or-tenure exception "encompass[es] virtually all personnel decisions." *Id.* at 705.

---

[8] The statute at issue in *Money* was 5 U.S.C. § 6324 (a). *See* 392 A.2d at 998. In 1979, this provision was superseded by the provision of the CMPA which can be now found at § 1-612.03 (j). *See* D.C. Code § 1-632.02 (a)(6) (2012 Repl.). The relevant language is identical.

We see no reason to differently designate non-chargeable sick leave claims now pursued under the CMPA. Although MPD resolves such claims using a more rigorous adjudication-like process,[9] the fact remains that whether to award non-chargeable leave is a personnel matter. And since *Money*, this court has reaffirmed that it espouses a broad interpretation of the selection-or-tenure exception. Thus, in *Kennedy v. Barry*, 516 A.2d 176 (D.C. 1986), we held that all matters of personnel management, not simply the routine "day-to-day" decisions, qualify for the exception. *See id.* at 179 (stating that "[a] fair reading of *Money* does not support . . . [an] effort to distinguish day-to-day personnel decisions from other kinds of decisions" pertaining to personnel management).

Furthermore, in the years since the removal of grievances from OEA's jurisdiction, it has been our practice to entertain appeals from the Superior Court's review of MPD non-chargeable leave determinations. *See, e.g.*, *Smallwood v. District of Columbia Metro. Police Dep't*, 956 A.2d 705, 706-07 (D.C. 2008) (reviewing a non-chargeable sick leave claim first made to MPD's Director of Medical Services Division, then reviewed by MPD Human Services, then reviewed

---

[9] In *District of Columbia v. Jones*, 442 A.2d 512 (D.C. 1982), we held that the procedure then in place at MPD for the determination of non-chargeable leave eligibility was constitutionally deficient, and that the Due Process Clause required a fair hearing with certain procedural formalities. *Id.* at 521-24.

by the Superior Court); *Franchak v. District of Columbia Metro. Police Dep't*, 932 A.2d 1086, 1088-89 (D.C. 2007) (same). This court's determination in similar cases with this procedural posture suggests that *Money* remains good law and its selection-or-tenure designation for non-chargeable sick leave claims should be extended to such claims under the CMPA.

Finally, acknowledging Superior Court jurisdiction over review of non-chargeable sick leave determinations is consistent with our modern administrative scheme. The contested cases that this court currently hears generally fall into one of two categories: either they come from trained adjudicators employed by the Office of Administrative Hearings,[10] who are bound by certain procedural requirements, *see* D.C. Code § 2-1831.09 (2012 Repl.), or they come from an agency's external review board, whose membership and procedures are statutorily defined.[11] By contrast, authority for creating the process to award non-chargeable

---

[10] OAH was created in 2002 to adjudicate cases on review from agencies as designated by statute. *See* Office of Administrative Hearings Establishment Act of 2001, D.C. Law 14-76 (codified at D.C. Code §§ 2-1831.01 to 2-1831.19 (2012 Repl.)).

[11] For example, although non-chargeable leave determinations are made by the MPD Director of Medical Services, *see* D.C. Code § 5-708.01 (b) (2012 Repl.), the Police and Firefighters Retirement and Relief Board is charged with hearing officers' long-term disability and retirement claims, *see* D.C. Code § 5-722 (2012

(continued…)

leave is delegated by statute to the MPD, *see* D.C. Code § 5-708.01 (b), and MPD has established a procedure for internal resolution.[12] Before they come to this court, it is appropriate for these cases to go first to the Superior Court where any factual deficiencies may be discerned and the legal claims raised may be neutrally assessed.

For all of these reasons, we hold that Lt. Nunnally's claim for non-chargeable sick leave under the CMPA falls within the selection-or-tenure exception to "contested cases" under the DCAPA, that the Superior Court properly reviewed MPD's denial of Lt. Nunnally's request as an exercise of its general jurisdiction, and that we have jurisdiction to review the Superior Court's resolution of her claim.

### III. Statutory Analysis

---

(…continued)
Repl.). The composition of the Board is prescribed by statute, *see id.*, and its procedures are laid out in regulations. *See* 7 DCMR §§ 2500-99 (1986).

[12] Also by contrast, these procedures, although subject to challenge under *Jones*, *see* 442 A.2d at 517, are largely left to the MPD's discretion and subject to change without notice to or input from the public.

Determining that the case has properly reached this court, we turn to the merits of Lt. Nunnally's claim and hold that the Superior Court erred in affirming the MPD's determination that her psychological injuries were not incurred in the performance of duty within the meaning of D.C. Code § 1-612.03 (j).[13]

"We review the affirmance of an administrative action by the trial court in the same way that we would examine the agency's ruling if it came before us on direct review from the agency." *Hahn v. Univ. of District of Columbia*, 789 A.2d 1252, 1256 (D.C. 2002). Generally that means we accept the agency's findings of fact if they are supported by substantial evidence. *See Franchak*, 932 A.2d at 1091; *Pierce v. District of Columbia Police & Firefighters' Ret. & Relief Bd.*, 882 A.2d 199, 205 (D.C. 2005). But this appeal does not implicate any findings of fact; rather, Lt. Nunnally is challenging the MPD's determination that, even if it were true that she suffered psychological injury as a result of retaliatory activities by coworkers after she reported being sexually harassed by a supervisor, such an injury did not qualify for non-chargeable leave under D.C. Code § 1-612.03 (j) as a

---

[13] The Superior Court did not address the propriety of the MPD's denial of Lt. Nunnally's claim under its stress protocol and the MPD has not argued before this court that its decision was independently justified on this basis. Thus, we address only Lt. Nunnally's categorical eligibility for non-chargeable leave under the relevant statutes.

matter of law. In reviewing this legal conclusion, our review is *de novo*, as "we are presumed to have the greater expertise when the agency's decision rests on a question of law, and we therefore remain 'the final authority on issues of statutory construction.'" *Washington Metro. Area Transit Auth. v. District of Columbia Dep't of Emp't Servs.*, 683 A.2d 470, 472 (D.C. 1996) (quoting *Harris v. District of Columbia Office of Worker's Comp.*, 660 A.2d 404, 407 (D.C. 1995)). Where we determine that a statutory term is ambiguous, however, we must defer to an agency's interpretation of that ambiguity that is reasonable and not plainly wrong or inconsistent with the legislature's intent. *See Chevron, U.S.A, Inc. v. Natural Res. Def. Council*, 467 U.S. 837, 842-43 (1984); *see also O'Rourke v. District of Columbia Police & Firefighters' Ret. & Relief Bd.*, 46 A.3d 378, 383 (D.C. 2012).

We begin with an examination of the plain language of the statute. *See Parrish v. District of Columbia*, 718 A.2d 133, 136 (D.C. 1998). D.C. Code § 1-612.03 (j) provides that "[s]ick leave may not be charged to the account of a uniformed member of the Metropolitan Police Department . . . for an absence due to injury or illness resulting from the performance of duty." The statute does not provide a definition for the phrase "performance of duty." But its meaning seems clear on its face, and, in conjunction with the preceding language referring, without limitation, to "injury or illness," broadly encompasses any injury — physical or

psychological — incurred while an MPD officer is working, i.e., performing her duties.

Our understanding of "performance of duty" under D.C. Code § 1-612.03 (j) is in line with this court's broad interpretation of the same phrase when used in the related context of the District of Columbia Police and Firefighters Retirement and Disability Act ("Disability Act").[14] Although this court has not expressly analyzed the meaning of "performance of duty" under the Disability Act, we have affirmed its application to any "on-the-job" injury.

For example, in *Britton v. District of Columbia Police & Firefighters' Ret. & Relief Bd.*, 681 A.2d 1152, 1153 (D.C. 1996), this court found that a police officer met the burden of showing performance of duty injury where his inner ear was

---

[14] Under the Disability Act, the phrase "performance of duty" appears frequently. For example, whether an injury is incurred "in the performance of duty" dictates the size of the pension received by an officer who retires because of a disabling condition, *see* D.C. Code §§ 5-709 (a), 5-710 (a) (2012 Repl.), and affects the payment of survivor benefits and annuities, *see* D.C. Code § 5-716 (2012 Repl.).

The linkage between "performance of duty" in D.C. Code § 1-612.03 (j) and the Disability Act is further supported by the apparent application of the procedural provision in D.C. Code § 5-708.01 (addressing "processing of claims of injuries allegedly sustained within the performance of duty") to claims for non-chargeable sick leave under D.C. Code § 1-612.03 (j). *See, e.g.*, *Smallwood*, 956 A.2d at 707-08; *Franchak*, 932 A.2d at 1089.

injured by a backfiring bus that had been provided to transport him and fellow officers back to their stationhouse after they finished a crowd control detail elsewhere in the District.[15] And in a case with substantially similar facts to the instant appeal we held that such on-the-job injuries included psychological injuries. *See Pierce*, 882 A.2d at 206. In *Pierce*, we held that a plaintiff who alleged that her mental illness stemmed from harassment and discrimination in the workplace had "amply met her initial burden of making a prima facie showing that her mental illness was related to an on-duty causative event," *id.*, although we ultimately determined that her inability to prove that incidents of harassment actually occurred doomed her claim.[16] *Id.* at 209. The focus on "on-duty causative events" in these cases is consistent with our understanding of the plain meaning of "performance of duty."

Even assuming, however, that the statutory phrase "performance of duty" is ambiguous enough to warrant consideration of a more specific agency interpretation, we find no such interpretation on which we can reasonably rely.

---

[15] By contrast, we held in *Smallwood* that an off-duty officer who was injured in the course of a shootout with a would-be robber did not suffer injuries in the performance of duty. *See* 956 A.2d at 709.

[16] *See also Beckman v. District of Columbia Police & Firefighters' Ret. & Relief Bd.*, 810 A2d 377, 386 (D.C. 2002) (holding that a secret service agent who alleged that on-the-job stress resulted in a psychological injury had made out a prima facie case that he had incurred a performance of duty injury).

Ordinarily, in interpreting a statute that uses ambiguous language, "[w]e accord great weight to any reasonable construction of a regulatory statute by the agency charged with its administration," *see United Parcel Serv. v. District of Columbia Dep't of Emp't Servs.*, 834 A.2d 868, 871 (D.C. 2003) (citation and internal quotation marks and brackets omitted), and we will overturn an agency's legal interpretation only when it is "plainly wrong or inconsistent with the legislature's intent," *Red Star Express v. District of Columbia Dep't of Emp't Servs.*, 606 A.2d 161, 163 (D.C. 1992); *see also United Parcel Serv.*, 834 A.2d at 871. Consistent and longstanding agency interpretations, such as those enacted in regulations, merit the most deference, *see Kelly v. District of Columbia Dep't of Emp't Servs.*, 76 A.3d 948, 955 (D.C. 2013); on the other hand, agency guidance manuals and other internal documents receive much less deference.[17]

In analyzing Lt. Nunnally's claim, the MCHO cited to no MPD regulation that defines, much less narrows the meaning of, "performance of duty," because no such regulation exists. Although MPD enacted an emergency rule in 2005 that

---

[17] *See United States v. Mead Corp.*, 533 U.S. 218, 228 n.9 (2001) (noting that an internal agency manual that is not "subject to the rigors" of the notice and comment process is entitled to only "some deference" (citing *Reno v. Koray*, 515 U.S. 50, 61 (1995)) (internal quotation marks omitted)); *Christensen v. Harris County,* 529 U.S. 576, 587 (2000) ("interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law . . . do not warrant *Chevron*-style deference").

defined a performance of duty injury as one "that arises out of and in the course of a member performing one or more of the essential tasks of his or her duties as a member of the [MPD]" and excluded "[p]sychiatric injuries" unless "they are the result of a 'critical incident,'" 7 DCMR § 2499 (2005), the emergency rule was allowed to expire and this definition was never adopted in a permanent regulation.

The MPD asserts that its narrow interpretation of "performance of duty" to exclude Lt. Nunnally's psychological injury is supported by its General Order PER 100.11 ¶ III.[18]  As a preliminary matter, we note that an MPD General Order "'essentially serves the purpose of an internal operating manual,'" *District of Columbia v. Henderson*, 710 A.2d 874, 877 (D.C. 1998) (quoting *Abney v. District of Columbia*, 580 A.2d 1036, 1041 (D.C.1990)), and "do[es] not have the force or effect of a statute or an administrative regulation," *Wanzer v. District of Columbia*, 580 A.2d 127, 133 (D.C. 1990).  Accordingly, we owe less deference to such a statement of MPD policy.[19]

---

[18]  The General Order does not reference D.C. Code § 1-612.03 (j); instead it cites to D.C. Code § 5-708.01, see *supra* note 14.

[19]  See *supra* note 17.

In any event, the General Order to which MPD directs our attention does not contradict our reading of the plain language of the statute; rather, it supports it. General Order PER 100.11 ¶ III provides that a "performance of duty" (POD) injury is one that "arises in the course of a member performing his/her duties as a police officer" and that an "on-duty" POD injury "is sustained when a member was legally on duty, as evidenced by time and attendance records, and engaged in work for the Department" — in other words, any time an officer is on the clock. MPD contends that we should read the words "as a police officer" as some sort of limitation on the scope of "performance of duty," but offers no limiting principle other than to assert that Lt. Nunnally's alleged psychological injuries by her coworkers do not qualify. We see no limitation to "duties as a police officer" other than to require that the officer be engaged in work activities.

The MPD also argues that, to discern whether Lt. Nunnally's alleged psychological injury was a performance of duty injury under D.C. Code § 1-612.03 (j), the MCHO properly relied on this court's decision in *Estate of Underwood v. Nat'l Credit Union Admin.*, 665 A.2d 621 (D.C. 1995). An agency's interpretation

of our case law does not trigger any obligation of deference on our part;[20] but in any event, the MCHO's reliance on *Underwood* was in error.

Nowhere in *Underwood* did we address eligibility for non-chargeable sick leave, much less discuss the meaning of "performance of duty" for a police officer under D.C. Code § 1-612.03 (j) (or any provision of the Disability Act). This is unsurprising because the plaintiff in *Underwood* — a civilian — was not seeking to establish that she was eligible to receive special benefits accorded to law enforcement officials with performance of duty injuries. Rather, the issue in *Underwood* was whether the plaintiff could sue her employer for damages or whether the Workers' Compensation Act (WCA) "provided the exclusive remedy for [an employee's] emotional distress claim against [her employer]" when she suffered emotional distress on the job as a result of sexual harassment. *Id.* at 624. We determined that a psychological injury stemming from sexual harassment was not a compensable workplace "injury" for the purposes of the WCA, *id.* at 635,[21]

---

[20] We defer to an agency's reasonable interpretation of a statute it is charged with implementing in recognition of "agency expertise." *See United Parcel Serv.*, 834 A.2d at 871. But interpretation of our case law is outside the expertise of the MPD.

[21] In so doing we did not analyze whether the injury was incurred in the performance of duty because the WCA does not contain this language. *See* D.C. Code § 36-301 (12) (2012 Repl.).

and that the plaintiff's claims under the D.C. Human Rights Act and the common law doctrine of intentional infliction of emotional distress were therefore not preempted by the WCA, *see id.* at 638. In short, the legal analysis underpinning the court's decision in *Underwood* is completely separate from and unrelated to Lt. Nunnally's claim for non-chargeable sick leave under D.C. Code § 1-612.03 (j).[22]

Thus even were we to determine that "performance of duty" is an ambiguous statutory term, we could not defer to the MCHO's interpretation, as it is plainly wrong and inconsistent with the legislature's intent. As we explained in our plain

---

[22] Notwithstanding that non-chargeable sick leave and "performance of duty" were never discussed, the MPD argues that because this court in *Underwood* determined that a psychological injury stemming from sexual harassment fell outside the workers' compensation scheme, *see* 665 A.2d at 635, the MPD could also determine that psychological injuries resulting from sexual harassment and retaliation for such harassment are likewise not compensable under D.C. Code § 1-612.03 (j). The MPD reasons that D.C. Code § 1-612.03 (j) is "part of a workers compensation scheme analogous to the WCA," just as the Disability Act has been "commonly understood to serve a purpose similar to that of a workers' compensation statute." *Vargo v. Barry*, 667 A.2d 98, 101 (D.C. 1995).

Although sections of the CMPA may, like the Disability Act, "serve a purpose similar" to the WCA, this analogy has little utility in this case. Our task is to analyze the specific statute before us, § 1-612.03 (j), and a similar purpose cannot overcome a meaningful difference in statutory language. In any event, this court stated in *Pierce* that "sexual harassment is not to be tolerated in any workplace and, if the allegations are shown to be true, they could be a basis for recovery" for a performance of duty injury. 882 A.2d at 209. We deem *Pierce* to be the more persuasive precedent.

language analysis, we interpret "performance of duty" broadly to include the injury alleged here by Lt. Nunnally.

For the reasons set forth above, we hold that Lt. Nunnally has alleged an injury that was incurred in the performance of duty under D.C. Code § 1-612.03 (j). Thus we reverse the Superior Court's order denying her petition for review and remand for further proceedings in accordance with this opinion.

*Reversed and remanded.*