Douglas R. RAY, Appellant,

v.

DISTRICT OF COLUMBIA, Appellee.

No. 85–1530.

District of Columbia Court of Appeals.

Argued Nov. 20, 1986.
Decided Dec. 10, 1987.[*]

Paul S. Blumenthal, Washington, D.C., for appellant.

Karen S. Dworkin, Asst. Corporation Counsel, with whom John H. Suda, Acting Corporation Counsel at the time the brief was filed, and Charles L. Reischel, Deputy Corporation Counsel, Washington, D.C., were on the brief, for appellee.

Before BELSON and ROGERS, Associate Judges, and NEBEKER, Associate Judge, Retired.[**]

[*] This opinion was released in typed form prior to printing.

[**] Judge Nebeker was an Associate Judge of the court at the time of argument. His status

NEBEKER, Associate Judge, Retired:

This is an appeal from the dismissal of appellant Ray's complaint and the subsequent denial of his motion for reconsideration. It presents the issue whether the Police and Firefighters Retirement and Disability Act, D.C.Code §§ 4–601 *et seq.* (1981 & Supp.1987) ("Act"), is the exclusive remedy for a disability retiree who is seeking compensation for injuries alleged as a result of medical services provided by the District of Columbia. Pursuant to various statutory provisions,[1] medical services, including a series of physical examinations, were administered to Ray, as a retiree, in connection with and because of an ongoing disability he suffered from "performance-of-duty" injuries. We hold that Ray's exclusive remedy is in the compensation plan set forth in the Act. Therefore, his complaint was properly dismissed.

According to the complaint, Ray began his employment as a firefighter in the District of Columbia in January 1967. On different occasions over the course of the next ten years, Ray suffered a series of injuries to his back while performing his duties as a fireman. He received treatment for his condition from doctors at the Police and Fire Clinic ("Clinic"). While Ray was under their care they prescribed Valium as part of his treatment. As a result of the duty-related injuries to his back, including a ruptured disc, Ray was retired on full medical disability in September 1977. Until 1980, yearly evaluations of his physical condition, performed by the Board of Police and Fire Surgeons ("Board"), indicated that Ray continued to suffer from the original disability.

After a September 1981 physical examination at the Clinic, the Board determined that Ray was no longer disabled. In January 1982, the Board unanimously recommended that Ray was fit to return to full duty as a firefighter. Before he could resume duties, however, pains in his back forced him to twice seek medical attention —once at a private hospital and once at the Clinic. In July 1982, Ray was reinstated as a firefighter and placed on light duty status. He has alleged that after resuming active duty he suffered further injury to his back on three different occasions.

The complaint filed by Ray sought damages on three different counts from the District of Columbia, as well as from the Fire Department, the Board, and the Clinic. The first count alleged that the Clinic and the Board breached their duty of care both as to their conduct of the September 1981 physical examination which led to Ray's reinstatement and as to their actual decision to reinstate. The second count contained the allegation that the medical care Ray received between September 1981 and July 1982 was below accepted standards and constituted medical malpractice. Ray alleged in the third count that throughout the course of the treatment for his back injuries the medical personnel breached their duty of care in the manner in which they prescribed and/or administered the drug Valium.

■ The four named defendants filed a motion to dismiss the complaint, pursuant to Super.Ct.Civ.R. 12. The trial court, relying on two different grounds, granted the motion with respect to all four defendants.[2] Specifically as to the District, the trial court based its dismissal, and the subsequent denial of the motion for reconsideration, on the ground that Ray's exclusive

changed to Associate Judge, Retired, on September 1, 1987.

1. Specifically, D.C.Code §§ 4–120, –614, –616 and –627 (1981) allow for or require the District to make available certain medical services.

2. The trial court dismissed the complaint as against the Fire Department, the Board of Police and Fire Surgeons, and the Police and Fire Clinic on the grounds that those three entities were *non sui juris.* Each entity is an agency or governmental body within the District of Co-

lumbia government; therefore, each may be sued in its own right only if the entity has been established as a separate corporate body. *See* 3 E. McQuillan, The Law of Municipal Corporations § 12.40 (3d ed. 1982 rev. vol.). Because none of the three meets the criterion, the complaint was properly dismissed as to each. *See Braxton v. National Capital Housing Authority,* 396 A.2d 215, 217 (1978); *Tschanneral v. District of Columbia Board of Education,* 594 F.Supp. 407, 409 (D.D.C.1984).

remedy for the injuries claimed was to be found in the provisions of the Police and Firefighters Retirement and Disability Act, D.C.Code §§ 4–601 *et seq.* (1981 & Supp. 1987). We now address whether Ray's complaint against the District of Columbia was properly dismissed.

Police and firefighters in the District who are temporarily injured or permanently disabled while performing their duties are provided compensation under a scheme set forth in the above Act. The various provisions of the Act offer comprehensive coverage and afford "the exclusive remedy against the District of Columbia for uniformed personnel." *Lewis v. District of Columbia,* 499 A.2d 911, 915 (D.C. 1985). Prior case law has noted that the Act is, in effect, a worker's compensation plan. *Brown v. Jefferson,* 451 A.2d 74, 77 (D.C.1982) (citing the trial court's discussion). As such, the statutory provisions are "generally viewed as remedial legislation intended to advance a social policy which favors limiting the liability of employers, while insuring that all injured employees receive adequate and certain compensation expeditiously and without regard to fault." *Id.* at 77 (citations omitted).

In the case before us, Ray contends that the injuries alleged in his complaint did "not arise out of or in the scope of his employment with the Fire Department" but, instead, arose while he was retired on disability. Thus, he asserts his claims are not provided for in the compensation scheme set out in the Act. Ray argues that when a firefighter's injuries are not compensable under the terms of the Act, a civil action is a permissible remedy.

First, we will address the relation between Ray's employment with the Fire Department and his claims of negligence and medical malpractice which accrued while he was retired on disability. The claimed injuries were not immediately incurred in the performance of his duties as a firefighter; however, those injuries were allegedly a consequence of medical services which Ray received as a disability retiree. The medical services were furnished in connection with the ongoing disability that had result-

ed from Ray's original performance-of-duty injuries. Because these initial back injuries arose in the course of Ray's employment, the resulting disability was compensable. In administering medical services related to that disability, Ray suffered consequential injuries of which he now complains.

A number of statutory provisions, which set forth obligations of the District, create the connection between Ray's consequential injuries and his initial performance-of-duty injuries. Pursuant to D.C.Code §§ 4–120, –614, –616 and –627 (1981), a firefighter who is retired due to a disability is entitled to receive certain benefits, including actual medical services, payments for medical expenses, and a disability annuity. Because the District was acting in accordance with these statutorily imposed duties, there exists a necessary relation between the two series of injuries suffered by Ray. The initial injuries to his back resulted from firefighting activities. His impaired physical condition necessitated retirement from the Fire Department. As provided for in the Act and under D.C.Code § 4–120, Ray was eligible to receive payments for medical expenses, a disability annuity and continuing treatment for his injuries. It was as a result of the ongoing medical care that the subsequent injuries allegedly occurred.

The nature of the relationship between the District and Ray, starting from the point of the initial back injuries, was the following: The District provided compensation in accordance with the provisions of the Act during the extended period of Ray's disability. While the District was therefore fulfilling its responsibilities under the terms of the Act and pursuant to D.C.Code § 4–120, Ray allegedly suffered further injury.

In *Lindsay v. George Washington University,* 108 U.S.App.D.C. 44, 279 F.2d 819 (1960), the United States Court of Appeals for the District of Columbia confronted the same question that is presented here. In that case, however, the period of time between the initial and subsequent injuries was shorter, and the statutory scheme at issue was the District of Columbia Work-

men's Compensation Act of 1928.[3] The employee in *Lindsay* was first injured during the performance of job related duties. He alleged negligent treatment while receiving medical attention at the hospital operated by his employer. The employee sought to bring an action for malpractice against the employer's hospital for the later inflicted injury. As in the instant case, in *Lindsay* even though the initial injury was compensable, the employee argued that the subsequent injury involved "independent and totally unrelated negligent acts." *Id.* at 45, 279 F.2d at 820 (footnote omitted). Looking to the language of 33 U.S.C. § 907,[4] in which the employer is obliged to furnish medical services and supplies "for such period as the nature of the injury or the process of recovery may require," the court ruled that "[t]he employer is responsible in the particulars and to the extent specified by the [D.C. Workmen's Compensation Act] for all legitimate consequences flowing from a compensable injury." *Id.* at 46, 279 F.2d at 821.[5] Thus, the decision in *Lindsay* established that the responsibility of an employer to compensate for an injury carries with it a continuing obligation. The employer must compensate for any new injuries which grow out of or result from treatment or care provided in compensation for the primary injury.

■ We think the rule in *Lindsay* applies in this case. The Police and Firefight-ers Retirement and Disability Act has been recognized as a worker's compensation plan for uniform employees in the District. *Brown, supra,* 451 A.2d at 76. We hold that the Act is the exclusive remedy for both injuries suffered in the performance of duty and those "legitimate consequences flowing from a compensable injury."[6] This rule is in keeping with the "comprehensive" nature of the compensation scheme. *Lewis, supra,* 499 A.2d at 913. We believe that because the District was statutorily required to administer the medical services to Ray, the injuries are within that range of consequences to which the Act affords the exclusive remedy. The original injuries and subsequent injuries are sufficiently connected that Ray's remedy for the latter was exclusively to be found by exercising his rights under the Act.[7]

■ Finally, a brief comment regarding the contention that the suit for damages may be maintained because the District operated in a "dual-capacity" in its relationship with Ray. The "dual-capacity" doctrine of worker's compensation law allows that an employer will become liable in tort to an employee, the exclusive remedy rule being thereby disregarded, if the employer occupies, "in addition to his capacity as employer, a second capacity that confers on him obligations independent of those imposed on him as an employer." *McCor-*

3. Act of May 17, 1928, ch. 612, §§ 1–2, 45 Stat. 600 (subsequently codified, as amended, at the time of *Lindsay,* at D.C.Code §§ 36–501 *et seq.* (1951)) (repealed 1980).

4. Under the terms of the D.C. Workmen's Compensation Act of 1928, *supra,* §§ 36–501 *et seq.* (1951), the provisions of the Longshoremen's and Harbor Worker's Compensation Act, Act of Mar. 4, 1927, ch. 509, §§ 1–50, 44 Stat. 1424 (presently codified, as amended, at 33 U.S.C. §§ 901 *et seq.* (1982)), were applied to the District of Columbia.

5. In its opinion the court stated:
   As to an employee covered by the [Worker's Compensation Act], the employer has been held liable in this jurisdiction to provide compensation under the Act "for all legitimate consequences following an accident, including unskillfulness or error of judgment of the physician furnished as required, and the em-

ployee is entitled to recover under the schedule of compensation ... regardless of the fact that the disability has been aggravated and increased by the employer's selected physician...."
*Lindsay, supra,* 108 U.S.App.D.C. at 45, 279 F.2d at 820 (quoting *Fernandez v. Gantz,* 113 F.Supp. 763, 764 (D.D.C.1953)).

6. *Lindsay, supra,* 108 U.S.App.D.C. at 46, 279 F.2d at 821.

7. The issue posed to us in this case is whether Ray can properly bring a civil action for damages. Having determined that he cannot do so because there already exists a worker's compensation scheme for uniformed employees, we express no opinion as to whether the type of injuries which Ray claims are actually compensable under the terms of the Act. Nor do we address whether Ray has exhausted his administrative remedies.

*mick v. Caterpillar Tractor Co.*, 85 Ill.2d 352, 357, 53 Ill.Dec. 207, 209, 423 N.E.2d 876, 878 (1981) (quoting 2A A. LARSON, Workmen's Compensation § 72.80, at 14–112 (1976)). Ray argues that the District operated in one capacity as an employer and in the other as a provider of medical services. Under the dual-capacity rule, even though the Act serves as Ray's exclusive remedy against the District, it would only apply to those injuries which he suffered while the District was acting in its capacity as an employer. The District's additional role as a provider of medical services would make the worker's compensation remedy inapplicable and would allow a separate suit for damages.

. ■ We see no merit in a dual-capacity approach to this case. In *McCormick, supra,* the Supreme Court of Illinois described the test for invoking the dual-capacity rule as being "whether the employer's conduct has generated obligations that are unrelated to those flowing from the company's or individual's first role as an employer. If the obligations are related, the doctrine is not applicable." 85 Ill.2d at 357, 53 Ill.Dec. at 209, 423 N.E.2d at 878. *See,* 2A A. LARSON, Workmen's Compensation Law §§ 72.61(c) at 14–207, 72.81 at 14–229 (1987). As an injured uniformed employee, Ray was eligible for certain medical benefits. Once he became a disability retiree, the Act required that he undergo annual physical examinations as a means of checking the status of his condition. The continuing medical services were provided based on the initial employer/employee relationship between the District and Ray. Moreover, importantly, the District was not in the business of providing medical services but rather did so provide such services exclusively to police and firefighters in order to comply with statutory mandate. We see no basis, therefore, for ruling that the District operated in a dual-capacity. Thus, we hold that the District may not be deemed other than Ray's employer in order to permit a remedy beyond that found in the Act.

*Affirmed.*

ROGERS, Associate Judge, concurring:

I join the majority in affirming the dismissal of Ray's complaint against the District of Columbia for alleged negligence in medical treatment provided pursuant to statutory requirement. On the record before us, Ray has failed to demonstrate that the trial court erred in concluding that Ray's injuries arose in the course of his employment or that the dual capacity rule is applicable.