**John J. VARGO, et al., Appellants,**

**v.**

**Marion BARRY, Mayor of the District of Columbia, et al, Appellees.**

**No. 94–CV–657.**

District of Columbia Court of Appeals.

Argued Oct. 5, 1995.
Decided Nov. 2, 1995.

---

Douglas J. Rykhus, Washington, DC, for appellants.

Justin Draycott, Assistant Corporation Counsel, with whom Garland Pinkston, Acting Corporation Counsel at the time the brief was filed, and Charles L. Reischel, Deputy Corporation Counsel, Washington, DC, were on the brief, for appellees.

Before FERREN, TERRY, and STEADMAN, Associate Judges.

FERREN, Associate Judge:

Appellants, John and Debra Vargo, brought tort claims against several doctors for negligently treating Mr. Vargo—a firefighter retired on total permanent disability—at the Police and Firefighters Clinic. The Vargos also filed breach of contract, negligence, and loss of consortium actions against the District of Columbia for the same medical treatment. They sought damages on each count ranging from $300,000 to $2,000,-000.[1] Citing *Ray v. District of Columbia,* 535 A.2d 868 (1987), the trial court granted the defendants' motions to dismiss. On appeal, the Vargos contend, primarily, that (1) the trial court erred in dismissing their several related claims solely on the basis of *Ray,* and that (2) the District of Columbia Police and Firefighters Retirement and Disability Act ("Disability Act"), D.C.Code §§ 4–601, through 634. (1994 Repl.), does not preclude tort and contract actions arising out of negligent medical treatment of total disability retirees at the Police and Firefighters Clinic.

We conclude that the trial court did not err in dismissing these claims on the basis of *Ray,* a decision that binds this division of the court. *See M.A.P. v. Ryan,* 285 A.2d 310 (D.C.1971). In *Ray,* we held that the Disability Act provides "the exclusive remedy

---

1. The Vargos also sought $4,000,000 in damages for the alleged negligence of a private physician to whom a clinic physician referred John Vargo. The trial court granted the private physician's motion for summary judgment, which is not a subject of this appeal.

for both injuries suffered [by a retired firefighter] in the performance of duty *and* those 'legitimate consequences flowing from a compensable injury' "—including "any new injuries which grow out of or result from treatment or care provided in compensation for the primary injury." *Ray*, 535 A.2d at 871 (quoting *Lindsay v. George Washington University*, 108 U.S.App.D.C. 44, 46, 279 F.2d 819, 821 (1960)) (emphasis added). Because John Vargo's injuries allegedly occurred from Clinic treatment of the on-duty injuries that gave rise to his disability retirement, he is limited to the administrative remedy provided under the Disability Act—a remedy he has not purported to exhaust. The Vargos' claims, therefore, were properly dismissed as a matter of law under *Ray*, without need for further explanation.

## I.

According to the complaint, Vargo began his employment as a firefighter with the District of Columbia Fire Department on June 23, 1974. A year and a half later, on January 31, 1976, Vargo was injured while on duty in the District of Columbia. He therefore became entitled to, and began to receive, treatment at the District of Columbia's Police and Firefighters Clinic for the injuries he received on duty. The Clinic is intended to provide qualifying uniformed personnel with the health care services mandated by the Disability Act. *See* D.C.Code § 4–614.

Clinic doctors treated Vargo with physical therapy and prescription drugs. As a result of continued pain in his back, neck, shoulder, legs, and left knee, doctors at the Clinic referred Vargo to Dr. Donald Cooney, an outside specialist. Dr. Cooney surgically removed a degenerative lumbar disk from Vargo's spine in May 1977. Vargo continued to visit the Clinic regularly for treatment after the surgery. On October 1, 1977, Vargo retired on full disability subject to the terms of the Act.

Clinic physicians continued to treat Vargo's symptoms for 13 years, from 1977 to 1990. In 1990, Dr. Lawrence Manning, a doctor employed at the Clinic, referred Vargo for orthopedic consultation in light of his complaints of persistent back pain and other symptoms. X-rays revealed that Vargo suffered from a fractured coccyx. Dr. Michael Dennis, a private neurosurgeon, surgically treated Vargo's fracture in December 1991. Following the surgery, Vargo continued his treatment at the Clinic.

On December 10, 1993, the Vargos sued Mayor Sharon Pratt Kelly (as a way of suing the District of Columbia), three physicians[2] at the Clinic, and Dr. Cooney, alleging medical malpractice in the diagnosis and treatment of Mr. Vargo's original performance-of-duty injuries. Against the District, the Vargos brought one count for breach of contract for the Clinic's failure "to properly monitor and care for" Vargo's medical needs, and one count for negligence alleging the Clinic's failure "to detect [Vargo's] broken coccyx for more than 17 years" and "to diagnos[e] and treat [his] post-traumatic stress." The Vargos also alleged one count of negligence on the same grounds against each of the individual Clinic doctors named in the complaint, as well as a count on Debra Vargo's behalf for "loss of spousal affection."

The District defendants (appellees here) and Dr. Cooney filed motions to dismiss, respectively, on March 27 and April 14, 1994. The trial court granted the District defendants' motion on April 22, 1994, relying on this Court's decision in *Ray* without elaboration. The Vargos filed an appeal. Thereafter, the trial court, upon denying Dr. Cooney's motion to dismiss, granted his motion for summary judgment. On November 4, the District defendants filed a motion for summary affirmance of the trial court's dismissal of the complaint. By an order dated January 9, 1995, we denied the motion and

---

2. The Vargos' complaint named Dr. Robert Dyer, Dr. Lawrence Manning, and Dr. Eugene Short both in the capacity "as an agent, employee, [and] representative of the District of Columbia" and "as a physician with a conventional physician-patient relationship." Dr. Short, however, was never served with process. The trial court did not address, and the Vargos did not present on appeal, the issue of the doctors' liability as "physician[s] with a conventional physician-patient relationship."

granted the Vargos' motion to reinstate their appeal.[3]

## II.

■ We held in *Ray* that the Disability Act provides the exclusive remedy against the District and its employees not only for injuries sustained by uniformed police officers and firefighters in the performance of their duties, but also for injuries arising from negligent medical treatment that disabled retirees receive under the Act. *Ray*, 535 A.2d at 871. *See* D.C.Code §§ 4–614, –616 (1994 Repl.) (retirees totally disabled from "injury or disease contracted or aggravated in the line of duty" entitled to "reasonable costs of medical, surgical, hospital, or other related health care services"). In reaching this conclusion, we noted that the Disability Act was commonly understood to serve a purpose similar to that of a workers' compensation statute.[4] As in the case of workers' compensation, those who apply for relief under the Disability Act are assured of receiving "adequate and certain compensation expeditiously and without regard to fault." *Brown v. Jefferson*, 451 A.2d 74, 77 (D.C.1982). However, like the public policy trade-off implicit in workers' compensation statutes—substituting limited liability without fault for the right to sue in court[5]—the Disability Act's remedies have been construed to be "the exclusive remed[ies] against the District of Columbia for uniformed personnel" injured in the performance of their duties. *Lewis v. District of Columbia*, 499 A.2d 911, 915 (D.C.1985).

This court in *Ray*, on facts similar to those presented here, considered whether the Disability Act provided the exclusive remedy for a total disability retiree who sought compensation for injuries to his back allegedly arising from the medical malpractice of Clinic physicians. *See Ray*, 535 A.2d at 869. Ray, a retired firefighter disabled by on-duty injuries, brought multiple claims against the District of Columbia, the Board of Police and Fire Surgeons, and the Police and Firefighters Clinic alleging the Clinic's negligent medical treatment. We rejected his argument that his injuries from treatment, while retired, did not arise out of his employment, and thus that he was free to bring a civil action against the District (and related entities) despite the Act's comprehensive and exclusive remedial scope. Rather, we held that "the original injuries and subsequent injuries ... [were] sufficiently connected" that the remedy for the latter was exclusively found under the Act. *Id.* at 871.

■ Because, as in *Ray*, John Vargo's "original injuries and subsequent injuries are sufficiently connected," *id.* at 871, our *Ray* decision is dispositive here. The trial court, therefore, did not err in dismissing the complaint. The Vargos are limited to their administrative remedies available from the Police and Firefighters Retirement and Relief Board under the Disability Act. *See id.* at 871.

## III.

It is important to emphasize that the *Ray* court made clear—though not explicitly so—

3. The Vargos' initial appeal from the trial court's order granting dismissal was denied on the ground that the order was not final as long as there was a claim pending against Dr. Cooney.

4. Appellants spend a great deal of effort attempting to convince the court that the Disability Act is not "a workers' compensation statute." They raise several distinctions between the Disability Act and typical workers' compensation statutes, such as the Disability Act's failure to allow an individual to maintain an action at law against the employer in the event a qualifying employee does not receive benefits. While we are not unmindful of such distinctions, we already have decided the issue. *See Brown v. Jefferson*, 451 A.2d 74, 76 (D.C.1982) (referring to statutory framework as "essentially ... a workmen's compensation plan"); *Lewis v. District of Columbia*,

499 A.2d 911, 913 (D.C.1985) (concluding that the Disability Act is a "comprehensive, and thus exclusive," remedy).

5. Recently, we noted in *Estate of Mary F. Underwood v. National Credit Union Administration*, 665 A.2d 621, 630 (D.C.1995) (citations and footnote omitted) that the local Workers' Compensation Act, *see* D.C.Code §§ 36–301 *et seq.* (1993 Repl.)—"a comprehensive scheme for compensating private sector employees for their work-related injuries"—"makes the employer liable without fault if the employee's accidental injury or death falls within the scope of the Act, but as a *quid pro quo* for such automatic liability the Act provides the employee's exclusive remedy—an administrative remedy—against employers for injuries within its reach." (Citations and footnote omitted.)

that there *is* an administrative remedy for totally disabled, retired firefighters who can demonstrate injuries caused by treatment at the Clinic. According to *Ray:*

> [T]he decision in *Lindsay* established that the responsibility of an employer to compensate for an injury carries with it a continuing obligation. The employer must compensate for any new injuries which grow out of or result from treatment or care provided in compensation for the primary injury.
>
> We think the rule in *Lindsay* applies in this case. The Police and Firefighters Retirement and Disability Act has been recognized as a worker's compensation plan for uniform employees in the District. *Brown, supra,* 451 A.2d at 76. We hold that the Act is the exclusive remedy for both injuries suffered in the performance of duty and those "legitimate consequences flowing from a compensable injury." This rule is in keeping with the "comprehensive" nature of the compensation scheme. *Lewis supra,* 499 A.2d at 913. We believe that because the District was statutorily required to administer the medical services to Ray, the injuries are within that range of consequences to which the Act affords the exclusive remedy. The original injuries and subsequent injuries are sufficiently connected that Ray's remedy for the latter was exclusively to be found by exercising his rights under the Act.

535 A.2d at 871 (footnotes omitted). This language cannot be read merely to say that a maltreated retiree's remedy, *if any,* falls exclusively under the Disability Act, leaving open the possibility of no remedy at all for demonstrable injury from medical treatment of disabled retirees under D.C.Code § 4–614. Such a reading would mean—contrary to the workers' compensation scheme addressed in *Lindsay* and embraced by *Ray*—that a disabled retiree, entitled to medical treatment (presumably with due care) under D.C.Code § 4–614 may or may not have a remedy for botched medical treatment. That cannot be the law; the statutory right to medical "services" cannot mean a statutory right to medical abuse. We understand the District to agree with this conclusion.

 The question is not presented, and we do not address, what the scope of the administrative remedy is; the Police and Firefighters Retirement and Relief Board, *see* D.C.Code § 4–628, has primary jurisdiction[6] to define it, subject to judicial review. The lesson implicit in *Ray,* however, is that the Disability Act, D.C.Code §§ 4–614 –628, requires the Board to provide an administrative mechanism for receiving and addressing such treatment claims and for providing relief for injury in appropriate cases consistent with the purposes of the statute.[7]

\* \* \*

For the foregoing reasons, we affirm the trial court's order dismissing the Vargos' claims, leaving the Vargos to their remedy before the Police and Firefighters Retirement and Relief Board.

*So ordered.*

---

**6.** Under the doctrine of primary jurisdiction, "a statute an agency administers must first be interpreted by the agency before a court may interpret it." 4 Kenneth C. Davis, Administrative Law Treatise § 22:11 at 120; (1983); see *id,* at § 22:4, at 95. In other contexts we have observed that when an agency interprets a statute it is charged with administering, or interprets its own regulations, we defer to the agency as long as it is not plainly wrong or inconsistent with the legislature's intent. *See Fort Chaplin Park Associates v. District of Columbia Rental Housing Comm'n,* 649 A.2d 1076, 1080 (D.C.1994); *Tesfamariam v. District of Columbia Dept. of Consumer and Regulatory Affairs,* 645 A.2d 1105, 1108 (D.C.1994);

*Smith v. Dept. of Employment Servs.,* 548 A.2d 95, 97 (D.C.1988).

**7.** We express no opinion on whether the Vargos' tort and breach of contract claims would be compatible with the kinds of administrative remedies available under the Disability Act. Likewise, we express no opinion on the possible effect of the repeal in 1992 of D.C.Code § 4–120. Finally, the Board also is free to consider the Vargos' allegation that the District has failed to "properly monitor and care for the needs" of Vargo as mandated by statute, in addition to the alleged medical maltreatment.