Jeffrey MAYBERRY, Appellant,

v.

James Antonio DUKES, Appellee.

No. 97–CV–598.

District of Columbia Court of Appeals.

Argued Sept. 14, 1999.

Decided Dec. 9, 1999.

John O. Iweanoge, Washington, DC, for appellant.

Patrick J. Christmas, for appellee.

Before FARRELL, RUIZ, and WASHINGTON, Associate Judges.

WASHINGTON, Associate Judge:

The principal issue on appeal is whether the trial court erred in denying appellant's motion to dismiss the complaint or alternatively for summary judgment, rejecting his contention that the Police and Firefighters Retirement and Disability Act, D.C.Code §§ 4–601 *et seq.* (1981 & Supp.1987) ("Disability Act"), provides the exclusive remedy for uniformed personnel injured by co-employees while in the performance of duty.[1] In addition, appellant contends that the trial court erred in (1) denying his motion for leave to file a third party complaint for indemnification due to its untimeliness; (2) denying his motion to exclude the testimony of witnesses disclosed to him the day of the trial; (3) allowing the jury to use Health and Human Services Tables of Mortality ("HHS") to calculate permanent disability and lost income; and (4) denying his motion for remittitur of jury award because calculation of the award was based on the assumption that appellee would continue to work until the age of seventy-two years (72). For the following reasons, we affirm.

## I.

This case arises from a shooting incident which occurred on or about January 28, 1994 between appellant, Jeffrey Mayberry, and appellee, James Dukes, both of whom are Metropolitan Police Department officers. The incident happened at 12:40 a.m. in the office of the Homicide Division while both Mayberry and Dukes were on duty. Dukes alleges that Mayberry was negli-

1. Mayberry argued in the alternative that the court erred in denying his motion to dismiss or alternatively for summary judgment because the District of Columbia Merit Personnel Act, D.C.Code §§ 1–624.1 to –624.46 (1987) ("CMPA"), provides the exclusive remedy for District of Columbia employees. Mayberry concedes, however, that the CMPA does not apply because Dukes already received compensation and benefits under the Police and Firefighters Retirement and Disability Act. The CMPA does not apply to members of the District of Columbia police and fire departments pensionable under §§ 4–607 to –630. *Brown v. Jefferson,* 451 A.2d 74 (D.C. 1982).

gent in his handling of his service weapon by pointing the weapon at Dukes after attaching a laser sight to the weapon in violation of police department regulations and that Mayberry fired the gun intentionally, striking Dukes. Mayberry contends that the gun accidentally discharged as he was attempting to reholster his weapon, striking Dukes.

On September 22, 1994, Dukes filed a complaint for damages in the trial court alleging negligence and battery against Mayberry. Dukes specifically claims that his injuries from the shooting were a direct and proximate result of the negligence of Mayberry in the handling and pointing of his gun at Dukes. Dukes also alleges that the shooting was the deliberate action of Mayberry, in which Mayberry was substantially certain that by his pointing a gun at Dukes and pulling the trigger, a bullet would discharge, thereby injuring him. On August 9, 1995, Mayberry filed a motion to dismiss the complaint or alternatively for summary judgment on the basis that Dukes' claims were precluded by the Police and Firefighters Retirement and Disability Act and/or the District of Columbia Merit Personnel Act. The trial court denied Mayberry's motion to dismiss the complaint or alternatively for summary judgment on October 20, 1995, at which point his counsel, the District of Columbia Office of the Corporation Counsel, withdrew from the case. Mayberry's current counsel filed a notice of appearance with the court on February 16, 1996. On July 1, 1996, Mayberry filed a motion for leave of court to file a third party complaint against the District of Columbia and Glock, Incorporated for indemnification which the court denied as untimely on August 9, 1996. The case proceeded to trial, and a jury found Mayberry liable for negligence and battery and awarded Dukes compensatory and punitive damages. The case

thus comes before this court on the basis of a jury finding of an intentional tort.

## II.

■ Mayberry contends that his motion to dismiss the complaint or alternatively for summary judgment was erroneously denied because Dukes' claims against him are precluded by the exclusivity provision of the Disability Act. This court has previously held that the Disability Act provides a comprehensive compensation scheme for police and firefighters in the District who are temporarily injured or permanently disabled while performing their duties. *Ray v. District of Columbia,* 535 A.2d 868, 870 (D.C.1987). While it is settled that the Disability Act provides the "exclusive remedy against the District of Columbia for uniformed personnel" injured on the job, *Lewis v. District of Columbia,* 499 A.2d 911, 915 (D.C.1985), its language and legislative history are silent as to whether this exclusivity extends to actions against co-employees.

Mayberry argues that the Disability Act cannot be read in a vacuum and, consistent with our prior decisions, must be read in harmony with the District's other comprehensive compensation schemes. Specifically, Mayberry argues that this court should look to the District of Columbia Workers' Compensation Act, D.C.Code §§ 36–301 to 36–345 (1981) ("WCA"), for guidance in determining whether the Disability Act would permit recovery against a co-employee for intentional tortious conduct. Although we agree that the Disability Act "serves a purpose similar to that of a workers' compensation statute," [2] this court has never addressed the issue of co-employee liability for intentional torts under the WCA. The WCA states in relevant part:

> The compensation to which an employee is entitled under this chapter shall constitute the employee's exclusive remedy

**2.** *See Vargo v. Barry,* 667 A.2d 98, 101 (D.C. 1995); *Ray, supra,* 535 A.2d at 870; *Brown,* *supra,* note 1.

against the employer, or any ... *employee* ... of such employer ... (while acting within the scope of his employment) for any illness, injury, or death arising out of and in the course of his employment....

D.C.Code § 36–304(b) (emphasis added). The WCA defines a compensable "injury" as an *"accidental* injury or death arising out of and in the course of employment ...." D.C.Code § 36–301(12) (emphasis added). In *Cruz v. Paige,* 683 A.2d 1121 (D.C.1996), we held that the WCA provided the exclusive remedy for accidental injuries arising out of one's employment, and thus, an injured employee was precluded from bringing an action against a co-employee for negligence. In *Grillo v. National Bank of Washington,* 540 A.2d 743, 748 (D.C.1988), we addressed whether the WCA would permit an employee to bring an intentional tort action against an employer and determined that the exclusivity provision of the WCA did not bar such a suit. However, the issue of whether the WCA would permit an employee to maintain an intentional tort action against a co-employee, despite its exclusivity provision, remains an open question and one that is not before us today.[3] Moreover, even though the Disability Act and the WCA serve similar purposes, we cannot just ignore differences in the statutory language of the two acts. Statutory silence does not give us license to read into the Disability Act what is not there.

◼ Because the Disability Act is silent as to whether tort actions against co-employees are barred, we are unwilling to interpret it as foreclosing suits against co-employees for intentional torts. This court follows the presumption that "the legislature does not intend to take away common law rights unless that purpose is clearly expressed in the statute." *Newman v. District of Columbia,* 518 A.2d 698, 703 (D.C.1986). Therefore, where there is an absence of clear language, existing rights of action should not be deemed destroyed. *See* 6 A. LARSON, WORKERS' COMPENSATION LAW § 72.13 (1999).

### III.

◼ Mayberry raises several other issues on appeal. Mayberry contends that the trial court erred in denying his motion for leave to file a third party complaint against the District of Columbia and Glock, Incorporated ("Glock") for indemnification despite the fact that it was not timely filed. The trial court has sound discretion in considering a motion for leave to file a third party complaint. *Kopan v. George Washington University,* 67 F.R.D. 36, 38 (D.D.C.1975) (citing C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE, § 1443 at 208 (1971)). In determining whether such a motion should be granted, the court must balance the (1) timeliness of the motion; (2) likelihood of causing delay in the trial; (3) possible prejudice to the plaintiff; (4) complications of the issues presented at trial; (5) merit or substance of the third-party complaint; and (6) additional expenses to the party in granting a motion to file a third party complaint. *Id.*

The trial court's balancing of these factors against allowing the District and Glock to be added to the proceedings at the last minute was not an abuse of discre-

---

**3.** The vast majority of jurisdiction that have addressed this issue have found that an employee may maintain a suit for damages against a co-employee for intentional tortious conduct despite the exclusivity provisions of their worker compensation statutes. *See* 6 A. LARSON, WORKERS' COMPENSATION LAW § 72.21 n. 23.1–23.2 (1999). Furthermore, although Mayberry suggests that this court look to the WCA in interpreting the Disability Act, the District has also adopted the Federal Employ-

ees Compensation Act ("FECA"), a forerunner of the District's Comprehensive Merit Personnel Act ("CMPA") and an Act that serves a purpose similar to the Disability Act and the WCA. Various federal courts have interpreted the exclusivity provision of FECA as not affecting the liability of co-employees for torts. *See, e.g., Heathcoat v. Potts,* 790 F.2d 1540 (11th Cir.1986), *cert. denied,* 484 U.S. 1025, 108 S.Ct. 747, 98 L.Ed.2d 761 (1988); *Bates v. Harp,* 573 F.2d 930 (6th Cir.1978).

tion. Mayberry filed the motion for leave some twenty-two months after the initial complaint was filed and almost five months after new counsel entered the case without an adequate explanation for the delay. To allow Mayberry to file a third party complaint against the District and Glock would have significantly delayed the trial and would have clearly prejudiced Dukes. With respect to the District, it is likely Mayberry's third party complaint would not be cognizable as a matter of law because Dukes had already received benefits from the District, and the Disability Act "excludes third party actions against the District of Columbia in cases arising out of the same set of facts that gave rise to the underlying claim under the Disability Act." *Lewis, supra,* 499 A.2d at 915.

 Mayberry further contends that the trial court erred in denying his motion to exclude the testimony of two witnesses for Dukes whose names were disclosed on the day of the trial, in asserted violation of the court's scheduling order. The record clearly indicates that at trial Mayberry did not move to have the testimony of these two witnesses excluded on grounds of surprise or breach of the court's order. Mayberry merely objected to the testimony of such witnesses on relevancy grounds. Determinations of relevancy are committed to the sound discretion of the trial court which will be upset on appeal only upon a showing of abuse. *Roundtree v. United States,* 581 A.2d 315, 328 (D.C.1990). Because the trial court has broad discretion in denying such motions and the testimony of these witnesses was clearly relevant, we find no abuse of discretion. We also perceive no plain error in the trial court's failure to exclude, *sua sponte,* the testimony of the witnesses because of the late date on which they were proposed.

 Mayberry also argues that the trial court erred in allowing the jury to use HHS tables to calculate permanent disability and lost income. The jury's use of the HHS tables to gauge the life expectancy of Dukes in order to calculate compensatory

damages was appropriate. There is no evidence that the jury misunderstood the instructions nor is there any evidence that the compensatory damages awarded by the jury were improper. The trial court properly instructed the jury with respect to the range of compensatory damages that could be awarded and the court will not disturb the jury award unless it is so large as to "shock the conscience." *Daka, Inc. v. Breiner,* 711 A.2d 86 (D.C.1998).

 Lastly, Mayberry argues that the trial court erred in denying his motion for remittitur. The trial court possesses broad latitude in denying a motion for remittitur, and we will not reverse such denial unless the trial court has abused its discretion. *Safeway Stores, Inc. v. Buckmon,* 652 A.2d 597, 606 (D.C.1994). For the reasons previously stated, there is no evidence that the jury did not make a reasonable estimate of damages based on the evidence presented to them. Therefore, we

*Affirm.*