**Stephen FRANCHAK, Appellant**

v.

**DISTRICT OF COLUMBIA MET-
ROPOLITAN POLICE DE-
PARTMENT, Appellee.**

**No. 06–CV–756.**

District of Columbia Court of Appeals.

Argued June 21, 2007.

Decided Aug. 2, 2007.

John V. Berry, Washington, DC, for appellant.

Pastell Vann, Senior Assistant Attorney General, District of Columbia, with whom Eugene A. Adams, Interim Attorney General at the time the brief was filed, and Todd S. Kim, Solicitor General, and Edward E. Schwab, Deputy Solicitor General, were on the brief, for appellee.

Before REID, FISHER, and BLACKBURNE–RIGSBY, Associate Judges.

REID, Associate Judge:

This case involves a claim by appellant, District of Columbia Metropolitan Police Department ("MPD") Officer Stephen Franchak, for administrative sick leave due to an on-duty psychological injury/illness—acute stress disorder, or post traumatic stress disorder ("PSTD"). Appellee, MPD, classified Officer Franchak's illness as a non-performance-of-duty injury and denied his claim. Subsequently, the trial court affirmed the MPD's decision. In his appeal before this court, Officer Franchak challenges the agency's decision on the grounds that MPD applied an incorrect legal standard and its conclusions were not based on substantial evidence. We affirm the agency's decision, concluding that it is grounded in correct legal principles and there is substantial evidence in the record to support it.

## FACTUAL SUMMARY

On August 19, 2003, at approximately 11:10 p.m., Officer Franchak was on patrol duty in a marked police cruiser when he observed a vehicle missing its front license plate and parked illegally in the 1900 block of 9th Street, in the Northwest quadrant of the District of Columbia. Officer Franchak pulled alongside the vehicle and exited the cruiser to speak with the driver of the car. Officer Brett Brown, a uniformed MPD officer who was also on patrol, stopped to assist Officer Franchak. Officer Franchak obtained the driver's consent to search the car and the driver got out of the vehicle. With Officer Brown standing by, Officer Franchak commenced the search. The driver began to walk away, heading south on 9th Street. Officer Brown called out to the driver to stop, but the driver began to run and Officer Brown gave chase. Officer Franchak remained with the vehicle because the search had revealed drugs. He reported the foot chase by radio to a police dispatcher.

Officer Brown caught the driver on the 800 block of T Street, and was escorting him back to the police cruisers when he began to verbally and physically resist Officer Brown. The driver reached for Officer Brown's service pistol partially removing it from the holster, but Officer Brown was able to gain control of the pistol. When the driver lunged towards him, Offi-

cer Brown discharged his service pistol shooting and fatally wounding him. Officer Franchak did not witness the struggle or shooting, but he heard the gunshots, notified the police dispatcher, and requested that MPD send someone to check on Officer Brown. When Officer Franchak arrived at the scene of the shooting he found Officer Brown on the ground, with the driver lying on top of him, dead. MPD gave both Officer Franchak and Officer Brown three days of administrative leave following the incident. Following his three days of administrative leave, Officer Franchak took previously scheduled leave.

On September 2, 2003, when Officer Franchak returned to work, he reported having difficulty sleeping. On September 3, 2003, he saw a doctor at the Police and Fire Clinic ("PFC") who prescribed sleeping medicine (Ambien), and he was evaluated by a licensed psychologist, C. Richard Filson, Ed.D. According to Dr. Filson's September 3, 2003 evaluation, Officer Franchak "report[ed] ... that he is continuing to present with 'zoning out' (?? disassociative) episodes during the day, intrusive memories of the event, mild hypervigilance, initial and middle insomnia which is refractory to prescribed Ambien...." He noted Officer Franchak's denial of past mental or physical health problems. Dr. Filson's diagnostic impression was "acute stress disorder." On September 19, 2003, Officer Franchak filed a PD Form 42 (injury or illness report).[1] Under "Nature of Injury/Illness" he wrote: "Sleep Depr[i]vation Post Traumatic Stress"; and as the "Cause" of his injury/illness, he stated: "Officer Involved in Shooting...."

Officer Franchak returned to the PFC for follow-up visits on September 24, 2003, October 8, 2003, and October 22, 2003, and was seen by various health professionals at the PFC, including Dr. Filson. Generally, he was instructed to continue his sick leave until he could sleep through the night without medication. On September 24, 2003, one doctor wrote that Officer Franchak was "[n]ow facing [a] Citizen Review Board complaint on top of other things," and on October 22, 2003, Dr. Filson stated, in part, that Officer Franchak experienced "mild, occasional middle insomnia," that Officer Franchak was "facing CCRB [Citizen or Civilian Complaint Review Board] next week and [he] want[ed] to know that outcome before" the officer's return to full duty. On October 29, 2003, Dr. Filson advised Officer Franchak that he was asymptomatic and that he could return to full duty. On November 3, 2003, Officer Franchak returned to full duty. He had used approximately 400 hours of sick leave during his absence from work.

On February 27, 2004, MPD's Director of Medical Services Division issued a memorandum which reviewed Officer Franchak's PD Form 42 claim and classified the claimed injury as "non-performance of duty." The Director of Medical Services stated, "although [Officer Franchak] asserted that the matter is stressful to him, [he] has not provided sufficient facts and information in support of his action to leave duty and report 'stress' as the basis." As a result of this determination, the MPD denied Officer Franchak's request for administrative leave, and charged him with roughly 400 hours of sick leave. Officer Franchak filed a timely appeal of the Director's decision, and on May 4, 2005, a

---

1. The MPD requires an officer who suffers a work-related injury to file a PD Form 42. Upon receipt of the PD Form 42, the Chief Physician makes an assessment of whether the cause of the injury supports the officer's claim on the PD Form 42 and the Director of Medical Services determines whether the injury is classified as performance-of-duty or non-performance-of-duty.

Medical Claims Hearing Officer with MPD Human Services Division held an evidentiary hearing on Officer Franchak's appeal.

Following the evidentiary hearing, the Medical Claims Review Officer issued a report on June 15, 2005, affirming the Director of Human Services Division's decision to classify Officer Franchak's leave as "non-performance-of-duty." The Medical Claims Review Officer, Lt. Lamont D. Coleman, Sr., recognized that the "worker compensation provisions of the" District of Columbia Police and Firefighters Retirement and Disability Act, D.C.Code § 5–701 *et seq.* (2001) ("the Act"), governed Officer Franchak's claim. Lt. Coleman summarized Officer Franchak's testimony during the hearing, including the portion where the officer explained his problem with the shooting:

> [Officer Franchak] explained that he has been in many stressful situations throughout his career. He explained that he has been shot at and has had guns pointed at him.
>
> The problem with this shooting, he explained, is that he was the person who initiated the stop. He stated that he was having a hard time dealing with the fact that he put another officer in the position [of] possibly being hurt or killed.

Lt. Coleman considered two principal issues in the course of his decision:

1. Whether Officer Franchak has established that he suffered an (sic) injuries/illnesses that arose out of and in the course of [his] employment as a Metropolitan Police Officer?

2. Whether Officer Franchak's recovery for administrative sick leave benefits under workers compensation laws in-

cluding the Police and Firefighters Retirement [ ] and Disability Act are applicable in each of [his] claims? [2]

On the first issue, Lt. Coleman declared that an injury/illness must have been sustained while in the "performance of duty" in order to be compensable under the Act. He observed that "MPD is bound by the worker's compensation standards and policies as set by the Police and Firefighters' Retirement Relief Board who are charged with interpreting the provisions of the Act." But, if "the Board has not interpreted a specific portion of the Act, the MPD may be guided by the workers' compensation decisions of the Department of Employment Services." Referring to *Allen v. District of Columbia Office of Personnel,* ECAB No. 88–33 (December 19, 1990), and Professor Arthur Larson's treatise on workers' compensation, Lt. Coleman stated that Officer Franchak's injury/illness must "arise out of and in the course of claimant's employment." Moreover, where a stress injury is at issue, Lt. Coleman declared that it is necessary to use a "higher standard" for determining whether an injury/illness arises out of and in the course of employment, and that an appropriate test was set forth in *Dailey v. 3M Co. & Northwest Nat'l Ins. Co.,* H & AS No. 85–259, OWC No. 0066512 (May 19, 1988), ("the *Dailey* test"):

> [T]he claimant must show that actual conditions of employment, as determined by an objective standard and not merely the claimant's subjective perception of his working conditions, were the cause of his emotional injury. The objective standard is satisfied where the claimant shows that the actual working conditions could have caused similar injury in a

---

2. The Police and Firefighters Retirement and Disability Act, D.C.Code § 5–701 *et seq.* (2001).

person who was not significantly [predisposed].

Under this legal standard, Lt. Coleman asserted that Officer Franchak must "demonstrate persuasively on the record that his work duties were extraordinarily stressful, that the stress generated therefrom caused him a disabling psychiatric injury, and that he was not predisposed to the psychiatric injury." When Lt. Coleman applied the *Dailey* test, he found it significant that:

The [MPD's Force Investigation Team] report concluded that Officer Brown was involved in a physical struggle with the subject (Mr. Yonathan Teffera) over his service weapon. While gaining control of his service weapon, Officer Brown explained that he feared that his personal life was in danger. As a result, he had occasion to use deadly force against the subject. However, the report failed to indicate that the subject directed his actions towards Officer Franchak....

Lt. Coleman further observed:

While being in the vicinity while gunshots are being fired is no doubt a precarious situation, it is [ ] one for which Officer Franchak has been trained. As such, merely being present when a suspect is located and killed would be insufficient to meet the objective standard under *Dailey*. Officer Franchak also indicated during his testimony that the mere fact that he initiated the stop on

the suspect, caused feelings of regret. The sources of Officer Franchak's "stress" claim have not been medically or objectively related to his performance of duty as a Metropolitan Police Officer.... He has not sufficiently described the source of his stress arising out of and in the performance of his duties as a Metropolitan Police Officer. In addition, he has not demonstrated that his incident on August 19, 2003, subjected him to extraordinary stress that is beyond the stresses police officers face on a normal daily basis.

Based on this analysis, Lt. Coleman held that Officer Franchak "failed to meet the burden of proof for mental injury" under the *Dailey test*, and his claim was properly classified "non-performance-of-duty." He then concluded that the "MPD stress protocol is consistent with the rulings of *Dailey, Spartin* and other rulings regarding workers compensation laws."[3] Furthermore, he cited to cases from other jurisdictions where "benefits would be denied for mental injuries on the basis of experiences such as encounters with gun or knife w[i]elding suspects or involvement in shootouts because these traumatic events were not abnormal for police officers." As for the second issue, Lt. Coleman determined that Officer Franchak was not entitled to administrative sick leave benefits under the Act because he did not suffer a performance of duty injury/illness. Officer

**3.** The Stress Protocol requires that claims of emotional injury must be based on incidents that are extraordinary and beyond the normal stressors of police work as an occupation. The Medical Claims Review Officer stated that the Stress Protocol "critical incident" standard is consistent with this jurisdiction's treatment of stress induced emotional injuries in so far as the Board and the Court of Appeals have "den[ied] performance-of-duty benefits when the claim [wa]s based on general job stress related to the inherently stressful work of policing or fire suppression." Ac-

cordingly, the Medical Claims Review Officer asserted that the Stress Protocol "critical incident" standard means that an officer's "claims of emotional injury must be based on incidents that are extraordinary and beyond the normal stressors of police work...." It appears that MPD changed the definition of "critical incident" after the agency made its decision. We need not, and do not examine the Stress Protocol, however, because the Medical Claims Review Officer discussed it only to show its consistency with the *Dailey* test.

Franchak appealed the agency's decision to the trial court.

The trial court found that Lt. Coleman did not rely solely on the Stress Protocol, but cited both the *Dailey* test and the Stress Protocol as two independent grounds for his decision. The court determined that he properly applied the *Dailey* test and that there was "substantial evidence in the record as a whole" to support the agency's decision.

## ANALYSIS

Officer Franchak contends that the agency's decision was "clearly erroneous, contrary to law and not based upon substantial evidence." He argues that the Medical Claims Review Officer based the agency's decision on the Stress Protocol "critical incident" standard, which he maintains was incorrect. He also asserts that his claim satisfied the *Dailey* objective test. The District argues that the Medical Claims Review Officer "did not deny administrative leave to Officer Franchak based solely on its Stress Protocol" that the agency's "rationale [under the *Dailey* test] [wa]s sufficient, standing alone to support MPD's denial of Officer Franchak's request for administrative sick leave"; and there is substantial evidence in the record to support the agency's conclusion that Officer Franchak did not suffer a performance-of-duty injury as described by the *Dailey* test. Finally, the District contends that "D.C.Code § 1–612.03(j) does not create a presumptive entitlement to administrative leave—an officer has the burden to establish that the injury/illness for which he seeks administrative leave occurred in the performance of duty."

■■■ In reviewing an agency decision under the Act, we "defer[ ] to the Board's reasonable interpretation of the law it is charged with implementing," *Pierce v. District of Columbia Police & Firefighters'*

*Ret. & Relief Bd.*, 882 A.2d 199, 205 (D.C. 2005), that is, we accept the agency's interpretation "as long as it is not plainly wrong or inconsistent with the legislature's intent." *Vargo v. Barry*, 667 A.2d 98, 102 (D.C.1995). However, we may reverse an agency decision if it is "grounded on a mistaken legal premise or manifests an abuse of discretion." *Alexander v. District of Columbia Police & Firefighters' Ret. & Relief Bd.*, 783 A.2d 155, 157 (D.C. 2001) (citations omitted). We must accept an agency's findings if "upon review of the entire record, they are supported by substantial evidence." *Pierce, supra,* 882 A.2d at 205. Substantial evidence means " 'more than a mere scintilla'; it is evidence that a 'reasonable mind might accept as adequate to support a conclusion.' " *Pierce, supra,* at 205 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)). If this court concludes there is substantial evidence supporting the agency's decision, we may not "substitute our judgment for the [agency's] even though there may be substantial evidence in the record to support a contrary finding." *Pierce, supra,* at 205 (quoting *Baumgartner v. District of Columbia Police & Firemen's Ret. & Relief Bd.*, 527 A.2d 313, 315 (D.C.1987)).

■■■ We have held that the Act is the exclusive remedy for MPD officers who are injured in the performance-of-duty. *See, e.g., Vargo, supra,* 667 A.2d at 101 (noting that the Act, "was commonly understood to serve a purpose similar to that of the workers' compensation statute."). And, in another case, we said the agency reasonably concluded that under the Act, an officer claiming compensation for an on-duty injury must first make a showing of an injury "incurred in the performance of duty." *See Pierce, supra,* at 204; *Beckman, supra,* 810 A.2d at 384; *Baumgart-*

ner, *supra*, 527A.2d at 315.[4] In *Pierce*, we stated that "the evidentiary burden to prove a *prima facie* case is not onerous ... there merely needs to be a sufficient basis to permit a reasonable inference that the disability injury was incurred in the performance of duty." *Pierce, supra*, at 206. Once a claimant makes a *prima facie* case, the employer bears the burden of disproving the inference that the officer's injury was caused by an on-duty injury. *Beckman, supra*, at 384. If a claimant makes a *prima facie* case, we review the record to determine "whether the District met its burden to produce substantial evidence tending to disprove the inference that the disability resulted from the on-duty injury." *Pierce, supra*, at 206 (inter-

nal quotation marks omitted) (quoting *Britton v. District of Columbia Police & Firefighters' Ret. & Relief Bd.*, 681 A.2d 1152 (D.C.1996)); *accord, Beckman, supra*, at 384; *Johnson v. Board of Appeals & Review*, 282 A.2d 566, 570 (D.C.1971). If the agency offers substantial evidence which disproves the initial inference afforded to a claimant who satisfies the *prima facie* case, then the "ultimate burden of persuasion remains with the person claiming entitlement...." *Pierce, supra*, at 207.

Initially, we disagree with Officer Franchak's contention that the Medical Claims Review Officer incorrectly relied on the Stress Protocol to reach his decision. Our

---

**4.** On September 30, 2004, after Officer Franchak's August 2003 incident, the Council of the District of Columbia enacted amendments to the Act, relating to performance of duty injuries or illnesses and medical leave for such injuries, which took effect as part of D.C. Law 15–94. D.C.Code § 5–708.01(b) (2001 & Supp.2006), specifies the process for determining whether a police officer's or firefighter's claimed injury or illness was sustained in the performance of duty:

The Director shall determine, based on a review of the unit commander's report on the cause of the injury or illness and after consultation with the Police and Fire Clinic physicians on the nature of the injury or illness, whether a member's injury or illness was sustained by the member in the performance of duty within 30 calendar days of a claim being reported to the department. If the Director fails to meet the 30–day deadline, there shall be a rebuttable presumption that the member's injury or illness was sustained in the performance of duty. Until the presumption is rebutted by a finding by the Director that the injury or illness was not sustained in the performance of duty, the member's Department shall be responsible for all treatment costs and disability compensation pay.

D.C.Code § 5–633(a) (Supp.2006) concerns medical leave for performance of duty illnesses and injuries:

(a) Except as provided in subsection (e) of this section, if the Director, in consultation

with the Police and Fire Clinic physicians, determines that a member can neither perform the full range of duties nor work in a limited-duty status due to a performance-of-duty injury or illness, the member shall be entitled to non-chargeable medical leave and shall receive administrative pay for a period of not more than 2 years in accordance with rules established by the Mayor. And, D.C.Code § 5–634(a) (Supp.2006) pertains to medical leave for non-performance of duty illnesses and injuries:

(a) If the Director, in consultation with the Police and Fire Clinic physicians, determines that a member can neither perform the full range of duties nor work in a limited-duty status due to a non-performance-of-duty injury or illness, the member shall be entitled to chargeable medical leave to the extent the member has leave in his or her sick leave and annual leave accounts, and in accordance with rules established by the Mayor under Chapter 6 of Title 1 and Chapter 5 of Title 32.

The legislative history of these provisions may be found in the following document: Council of the District of Columbia, Committee on the Judiciary, Bill 15–32, the "Omnibus Public Safety Agency Reform Amendment Act of 2003," December 9, 2003, at 16–17. Because these provisions took effect after the August 19, 2003 incident at issue here, we do not apply them in this case.

review of the record reveals that Lt. Coleman made his determination by applying the *Dailey* test to Officer Franchak's claim, and concluding: "The sources of Officer Franchak's 'stress claim' have not been medically or objectively related to his performance of duty as a Metropolitan Police Officer ...," and he "has not sufficiently described the source of his stress arising out of and in the performance of his duties as a Metropolitan Police Officer." Only after making this determination did the Medical Claims Review Officer, gratuitously and unnecessarily, discuss whether the Stress Protocol was consistent with *Dailey* and other applicable law.

Since we previously have upheld the use of the *Dailey* test or an analogous objective standard,[5] and because the Act does not explicitly address emotional or psychological injuries/illnesses, including when they arise out of or in the course of a police officer's duties, the agency reasonably relied on *Dailey* in deciding Officer Franchak's claim; we approved application of the *Dailey* test in *Spartin, supra,* 584 A.2d at 569.

Nevertheless, we have not explicitly considered the applicability of the *Dailey* test under the Act. However, in *Pierce, supra,* we affirmed a Police and Firefighters Retirement and Relief Board ruling which required an MPD officer claiming a stress injury to "prove that the instances of harassment occurred and that they [we]re beyond the pale of normal workplace disputes." *Id.* at 208 (citations omitted). *Pierce* references *McEvily, id.,* and we observed in *Spartin, supra,* that *McEvily* "is also arguably consistent with the *Dailey* standard." 584 A.2d at 569 (footnote

omitted). Hence, since *Pierce* adopted an objective test based on much the same authority and rationale as *Spartin, supra,* we cannot say that the agency's application here of the *Dailey* test by name is a plainly wrong or unreasonable interpretation of the Act.

▪ Having determined that the Medical Claims Review Officer did not err in applying the *Dailey* test, we now turn to the question of whether the record contains substantial evidence to support Lt. Coleman's conclusion that Officer Franchak's injury failed to satisfy the *Dailey* test. Officer Franchak initially was entitled to a "reasonable inference that [his] disability was incurred in the performance of duty." *Pierce, supra,* at 206. An inference of an on-duty injury is reasonable based on the fact that Officer Franchak was on duty during the August 19, 2003, incident; he was diagnosed with post traumatic stress disorder following the incident; and Dr. Filson, who evaluated Officer Franchak, found no prior pre-existing psychological conditions and believed his symptoms to be "valid."

However, the agency "met its burden to produce substantial evidence tending to disprove the inference that [Officer Franchak's PTSD] resulted from [an] on-duty injury[/illness]," *Pierce, supra,* 882 A.2d at 206 (internal quotation marks and citation omitted). Neither Dr. Filson nor any of the other PFC health professionals who treated Officer Franchak stated that his PTSD resulted from the performance of his police duties on August 19, 2003. Furthermore, as the agency determined during its investigation, and as Lt. Coleman found: Officer Franchak: (1) was not the

5. *See, e.g., Charles P. Young Co. v. District of Columbia Dep't of Employment Servs.,* 681 A.2d 451 (D.C.1996); *Porter v. District of Columbia Dep't of Employment Servs.,* 625 A.2d 886, 889 (D.C.1993); *Spartin v. District of Columbia Dep't of Employment Servs.,* 584 A.2d 564, 568 (D.C.1990); *McEvily v. District of Columbia Dep't of Employment Servs.,* 500 A.2d 1022, 1023 (D.C.1985).

target of the suspect's aggression, (2) did not witness the struggle, (3) did not witness the shooting, (4) was only in the vicinity when the shooting occurred, (5) had experienced similar incidents before, and (6) had been trained for such circumstances. Lt. Coleman contrasted the experiences of Officers Brown and Franchak on August 19, 2003:

> Officer Brown made a conscious decision to pursue the suspect alone on the day of this event. The suspect confronted Officer Brown with an actual threat. Officer Brown shot and killed the suspect as a result of this threat. Officer Brown must re-live and rationalize his actions on this day for the rest of his life....

Officer Franchak did not have the same encounter with the suspect as Officer Brown, but felt regret due to "fact that he initiated the stop on the suspect."

Under the circumstances of this case where the officer suffered no physical injury, had no history of a prior psychological illness, specified on his PD–42 that the cause of his injury/illness was "officer involved in shooting," and explained during his hearing testimony that "[t]he problem with this shooting ... is that he was the person who initiated the stop [and] ... he was having a hard time dealing with the fact that he put another officer in this position to possibly being hurt or killed," we see no reason to disturb the agency's decision that Officer Franchak's involve-ment with the August 19, 2003, incident was not "beyond the stresses police officers face on a daily basis." Even if we disagreed with that conclusion, under our standard of review we may not "substitute our judgment for [the agency's]," *Pierce*, *supra*, 882 A.2d at 205 (citation omitted).

We now turn to Officer Franchak's argument that the agency based its decision on the Stress Protocol critical incident standard and that this standard "conflicts with law and clearly established precedent in the District of Columbia...." Since we held above that the Medical Claims Review Officer's application of the *Dailey* test was not an unreasonable interpretation of the Act, and that the ruling was based on substantial evidence in the record, the agency's decision may be upheld on the *Dailey* test alone. Therefore, we do not need to consider whether the Stress Protocol is a valid instrument for making decisions about stress-related work injury claims and we make no such determinations here.[6] Nor do we need to address the District's argument, and Officer Franchak's reply to that argument in his Reply Brief, that "D.C.Code § 1–612.03(j) does not create a presumptive entitlement to administrative leave—an officer has the burden to establish that the injury/illness for which he seeks administrative leave occurred in the performance of duty." Since the agency's decision that Officer Franchak did not sustain his injury/illness

---

**6.** In 2006, the Public Employee Relations Board ("PERB") upheld a decision by an arbitrator which found that the "Stress Protocol's definition of 'critical incident' is not consistent with prevailing law...." *Metropolitan Police Dep't v. Fraternal Order of Police/Metro. Police Dep't Labor Comm.*, PERB Case No. 05–A–07 (August 24, 2006) (citing *Spartin v. District of Columbia Dep't of Employment Servs.*, 584 A.2d 564 (D.C.1990); *Neer v. District of Columbia Police & Firemen's Ret. & Relief Bd.*, 415 A.2d 523 (D.C.1980)). The PERB decision pertained to the Stress Protocol issued in August 2003. However, the District issued a new version of the Stress Protocol "critical incident" standard in April 25, 2006. MPDC Gen. Order–Per–100.11 April 25, 2006. The Stress Protocol "critical incident" standard described by the Medical Claims Review Officer in evaluating Officer Franchak's stress claim matches neither the August 2003 version, nor the April 2006 version.

in the performance of his police duties is supported by substantial evidence, and because its interpretation of the Act is reasonable, we do not reach the issue, as the agency did not, whether he would be entitled to non-chargeable administrative leave under § 1–612.03(j).

Accordingly, for the foregoing reasons, we affirm the agency's decision.

*So ordered.*